# EXHIBIT 2

Order, *Kentucky v. EPA*, No. 23-3216 (6th Cir. July 25, 2023)

Nos. 23-3216/3225

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jul 25, 2023
DEBORAH S. HUNT, Clerk

COMMONWEALTH OF KENTUCKY,

      Petitioner (No. 23-3216),

KENTUCKY ENERGY AND ENVIRONMENT
CABINET,

      Petitioner (No. 23-3225),

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, et al.,

      Respondents.

O R D E R

Before: COLE, McKEAGUE, and NALBANDIAN, Circuit Judges.

In these related cases, petitioners the Commonwealth of Kentucky and the Kentucky Energy and Environment Cabinet seek review of an Environmental Protection Agency final action partially disapproving Kentucky's state implementation plan ("SIP") for failing to meet certain requirements of the Clean Air Act ("CAA"). Air Plan Disapprovals; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards, 88 Fed. Reg. 9336 (Feb. 13, 2022) (the "Final Rule"). The Environmental Protection Agency and its Administrator, Michael S. Regan (collectively, "EPA") move to transfer the actions to the United States Court of

Appeals for the District of Columbia Circuit pursuant to the CAA's venue provision, 42 U.S.C. § 7607(b)(1), or, in the alternative, to dismiss for improper venue. Petitioners oppose transfer, and EPA replies. Petitioners move to stay enforcement of EPA's denial of Kentucky's SIP pending our review. EPA opposes a stay, and Petitioners reply. In addition, the States of New York, Connecticut, Delaware, Maryland, New Jersey, the Commonwealth of Massachusetts, and the District of Columbia move to file an amicus brief in support of EPA and in opposition to a stay and have tendered their brief.

In all, we have three motions here: (1) the motion to transfer venue; (2) the motion to stay enforcement pending appeal; and (3) the motion to file an amicus brief. We address each in turn.

## I.

First, the motion to transfer. Venue for judicial review of challenges to the CAA is governed by 42 U.S.C. § 7607(b)(1), which provides, in pertinent part, that review of "nationally applicable regulations promulgated, or final action taken, by the [EPA] Administrator under this chapter may be filed only in the [D.C. Circuit]." However, "[a] petition for review of the Administrator's action in approving or promulgating any [SIP] . . . or any other final action of the Administrator under this chapter (including any denial or disapproval . . . under subchapter I) which is locally or regionally applicable may be filed only in the . . . appropriate circuit." *Id.* An exception to this rule is that a locally or regionally applicable final action "may be filed only in the [D.C. Circuit] if such action is based on a determination of nationwide scope or effect and if in taking such action the Administrator finds and publishes that such action is based on such a determination." *Id.*

EPA argues that the Final Rule is nationally applicable or, alternatively, that it is based on a determination of nationwide scope or effect; Petitioners disagree. We do not defer to an agency's

Nos. 23-3216/3225
-3-

interpretation of a venue statute. *See Smith v. Aegon Cos. Pension Plan*, 769 F.3d 922, 928 (6th Cir. 2014) ("[T]he Secretary is no more expert than this Court is in determining whether a statute proscribes venue selection."). There is some debate as to whether a rule disapproving multiple states' SIPs is regionally or nationally applicable. While the approval of SIPs is prototypically local or regional, *see Am. Rd. & Transp. Builders Ass'n v. EPA*, 705 F.3d 453, 455 (D.C. Cir. 2013), there is no default rule for the *disapproval* of a SIP. The text of § 7607(b)(1) says that "any other final action of the Administrator under this chapter (including any denial or disapproval [of a SIP]) which is locally or regionally applicable" must be filed "in the United States Court of Appeals for the appropriate circuit." 42 U.S.C. § 7607(b)(1); *see generally id.* § 7410 (governing SIPs for "national primary and secondary ambient air quality standards"). In making that assessment, we, not EPA, "determine[] both the scope of an action's applicability and whether it was based on a determination of nationwide scope or effect," *State v. EPA*, 983 F.3d 826, 833 (5th Cir. 2020); that determination is made de novo, *Texas v. EPA*, 829 F.3d 405, 421 (5th Cir. 2016).

What's important here is determining *what* "final action" we are dealing with. 42 U.S.C. § 7607(b)(1); *see Texas v. EPA*, No. 23-60069, slip op. at *7 (5th Cir. Feb. 14, 2023) (order) (determining preliminarily what relevant "final action taken by the agency [] the petitioner seeks to prevent or overturn" (quoting *Texas*, 829 F.3d at 419)).

Under the CAA—the applicable statute granting EPA's authority over the challenged action here (the SIP denial)—implementing National Ambient Air Quality Standards ("NAAQS") requires three distinct steps. First, EPA promulgates or revises NAAQS. *See* 42 U.S.C. § 7409(b)(1). Second, the states submit SIPs that implement those NAAQS. *See id.* § 7410(a). And third, EPA approves or disapproves each SIP. *See id.* § 7410(k)(1)–(3).

Kentucky challenges the final step: EPA's disapproval of each state's SIP. *See id.* § 7410(k)(1)–(3) (specifying how EPA will work with each "State" individually to approve a SIP). EPA, under § 7410(k)(3), separately considered and disapproved Kentucky's SIP because it believed that the state did not comply with the CAA's good neighbor provision. True, the Final Rule packaged Kentucky's disapproval with other states. *See* Final Rule, 88 Fed. Reg. 9,336. But that doesn't matter because "[w]hat controls is the CAA," "[a]nd the CAA is very clear: The relevant unit of administrative action here is EPA's individual SIP denials." *Texas*, No. 23-60069, at *9. That "final action"—EPA's denial of *Kentucky's* SIP—is what we review. 42 U.S.C. § 7607(b)(1). With that, we turn to § 7607(b)(1)'s analysis in two steps.

## A.

To start, we determine whether EPA's SIP disapproval was "nationally applicable" or "locally or regionally applicable." *Id.* That question "turns on the legal impact" of the SIP disapproval and focuses on the "location" of the state or entity that the final action regulates. *Texas*, 829 F.3d at 419 (citation omitted). When a final rule, by its terms, regulates in a single judicial district, the action is not nationally applicable. *See Sierra Club v. EPA*, 926 F.3d 844, 849 (D.C. Cir. 2019) (finding an action "not nationally applicable" when it involved a "petition for objection to a single permit for a single plant located in a single state"); *Dalton Trucking, Inc. v. EPA*, 808 F.3d 875, 881 (D.C. Cir. 2015) at 881 (finding agency rules that, on their face, "regulate only nonroad engines and vehicles that are owned or operated *in* [one state]" were not nationally applicable); *Texas*, 706 F. App'x at 163; *see W. Oil & Gas Ass'n v. EPA*, 633 F.2d 803, 807 (9th Cir. 1980) (rejecting that promulgations affecting one state were "nationwide in scope or effect" because "[t]hey apply locally, not nationally").

As far as "the location of the persons or enterprises that the action[s] regulate[]," *Texas v. EPA*, No. 10-60961, 2011 WL 710598, at *3 (5th Cir. Feb. 24, 2011), here, the "legal impact" is local or regional, *Texas*, 829 F.3d at 419. Just as "most . . . approvals of SIPs or SIP revisions . . . unequivocally fall in the 'locally or regionally applicable' category," *Am. Rd. & Transp. Builders Ass'n*, 705 F.3d at 456, so too does the disapproval of SIPs. That's because the State Implementation Plans, by their very nature, concern each State's plan. *See* 42 U.S.C. § 7410(k)(1)–(3). Because the denial and legal impact of Kentucky's SIP affects only Kentucky—that is, it does not concern the nation, let alone any other state—the final action is "locally or regionally applicable." 42 U.S.C. § 7607(b)(1).

**B.**

We next turn to § 7607(b)(1)'s exception. Even if the agency's action is local or regional, the challenge "may be filed only in" the D.C. Circuit if the EPA can show two conditions. *Id.* EPA must show that the local or regional "final action" here (EPA's disapproval of Kentucky's SIP) is both (1) "based on a determination of nationwide scope or effect" and (2) properly published. 42 U.S.C. § 7607(b)(1). If the answer to either condition is no, we keep the case here. *Texas*, 829 F.3d at 421. Because EPA cannot meet the first condition, we need not consider the second.

Whether the determination is of nationwide scope or effect is a "context-specific question," *Texas v. EPA*, 706 F. App'x 159, 165 (5th Cir. 2017), which requires us to look at "EPA's factual conclusions or expertise" underlying the determination. *Texas*, 829 F.3d at 422. In proving that condition, EPA faces a "steep hurdle." *Texas*, No. 23-60069, at *11. That's because SIP disapprovals are usually "highly fact-bound and particular to the individual state." *Texas*, 829 F.3d at 421 n.24. And so it is here.

The Final Rule states that it reviewed approaches (like those that EPA believed to vary from its nationally uniform framework) "in light of the facts and circumstances of *each particular state's* submission." Final Rule, 88 Fed. Reg. at 9340 (emphasis added); *id.* at 9354 ("[T]he contents of each individual state's submission were evaluated on their own merits."). So EPA's disapproval here was based "on a number of intensely factual determinations" unique to Kentucky. *Texas*, 829 F.3d at 421. The detailed reasoning for disapproval is not even contained in the Final Rule; rather, EPA recommends that any questions on "specific SIP submissions" be directed to the Regional Offices which conducted the analysis. Final Rule, 88 Fed. Reg. at 9337. And the reasoning that the Final Rule does provide for *Kentucky*'s SIP denial is "based on a determination" involving Kentucky and Kentucky alone. *See, e.g.*, *id.* at 9356 ("*Kentucky* is projected to be linked above 1 percent of the NAAQS[.]" (emphasis added); *id.* ("*Kentucky* is linked above 1 ppb to a violating-monitor receptor." (emphasis added).) These "intensely factual determinations" do not have nationwide scope or effect because they all relate "to the particularities of the emissions sources in" Kentucky—not in any other state. *Texas*, 829 F.3d at 421.

Because Kentucky's SIP denial was based on a determination of local scope or effect, EPA fails to rebut the "default presumption of § 7607(b)(1)," which "requires" that this Circuit review locally or regionally applicable actions. *Id.* at 424. Thus, we agree with other circuits to have considered this issue that transfer is not warranted. *See Texas*, No. 23-60069, at *2; *Arkansas v. EPA*, No. 23-1320 (8th Cir. Feb. 16, 2023).

## II.

We next address the motion to stay enforcement pending appeal. We consider four factors in determining whether to issue a stay pending appeal: (1) "whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits"; (2) the likelihood the "applicant will

be irreparably injured absent a stay"; (3) "whether issuance of the stay will substantially injure" other interested parties; and (4) "where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The first two factors "are the most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009).

First, Petitioners must show a strong likelihood of success on their claim that EPA acted arbitrarily, capriciously, or unlawfully. *Hilton*, 481 U.S. at 776; *see Maryland v. EPA*, 958 F.3d 1185, 1196 (D.C. Cir. 2020) (per curiam) ("[Courts] apply the same standard of review under the [CAA] as [they] do under the Administrative Procedure Act.") (quoting *Allied Loc. & Reg'l Mfrs. Caucus v. U.S. EPA*, 215 F.3d 61, 68 (D.C. Cir. 2000)). An agency action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). While the standard is deferential, the court must still assess "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* (quoting *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974)).

At this juncture, we conclude that Kentucky has made a strong showing that it is likely to succeed on its arbitrary-and-capricious claim because EPA based its disapproval of Kentucky's SIP in part on modeling data and policy changes developed after Kentucky had submitted it. EPA may have valid policy reasons for continuing to evaluate upwind contribution at the one percent of its ambient air quality threshold; nevertheless, "[t]he reasoned agency decisionmaking that the [CAA] demands does not allow the EPA to keep moving the finish line." *New York v. EPA*, 964

F.3d 1214, 1223 (D.C. Cir. 2020) (citation omitted). And "agencies should provide regulated parties 'fair warning of the conduct [a regulation] prohibits or requires.'" *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 156 (2012) (alteration in original) (quoting *Gates & Fox Co. v. Occupational Safety & Health Rev. Comm'n*, 790 F.2d 154, 156 (D.C. Cir. 1986)). In fact, EPA has stated in the past that, "[i]n general, [it] has not required changes to submitted SIPs that result from changes in factors and methodologies that occur after the SIP is submitted." Approval and Promulgation of Air Quality Implementation Plans; District of Columbia, Maryland, Virginia, 68 Fed. Reg. 19106, 19120 (Apr. 17, 2003). But that is precisely what it appears to have done here, with both the modeling data and the contribution threshold, and Petitioners are likely to show that such conduct was arbitrary and capricious.

Petitioners also argue that EPA exceeded its authority under the CAA by failing to act on Kentucky's SIP submission within the statutory eighteen-month window and by abandoning its purely ministerial role in approving or disapproving states' SIPs. The Fifth Circuit found that the states were likely to succeed on the latter argument. *See Texas*, 23-60069, at *14–17. Given that Petitioners have shown a likelihood of success on their arbitrary and capricious arguments, we do not address those other arguments.

Petitioners argue that they face irreparable harm absent a stay. And we are persuaded by their "irreparable injury" claims. We have held that "invasions of state sovereignty . . . likely cannot be economically quantified, and thus cannot be monetarily redressed," and as such constitute irreparable harm. *Kentucky v. Biden*, 23 F.4th 585, 611–12 n.19 (6th Cir. 2022) ("*Biden I*"); *see also Georgia v. Pruitt*, 326 F. Supp. 3d 1356, 1367 (S.D. Ga. 2018) (order) (collecting cases where loss of state sovereignty was deemed irreparable harm). Petitioners are also likely to establish that Kentucky faces irreparable injury due to unrecoverable compliance costs, which it

faces immediately.  *See Commonwealth v. Biden*, 57 F.4th 545, 556 (6th Cir 2023).  Finally, Petitioners provide evidence that Kentucky residents will face higher prices and that Kentucky's power grid faces destabilization.  *See Texas*, 829 F.3d at 434 ("[P]lant closures [and] the threat of grid instability and potential brownouts alone constitute irreparable injury."); *see also Biden I*, 23 F.4th at 599 ("[S]tates also have a recognized quasi-sovereign interest in the health and economic well-being of their populaces.") (cleaned up).  While EPA provides compelling evidence that such alleged harm may ultimately be minimal, the threats to state sovereignty and the loss of unrecoverable compliance costs weigh in favor of granting a stay.

The final two factors "merge when the Government is the opposing party."  *Nken*, 556 U.S. at 435.  We find Petitioners' assertions weightier.  A stay will not harm EPA because Kentucky's SIP established that it complies with the CAA's good neighbor provision based on a standard EPA endorsed.  Further, EPA itself delayed disapproving Kentucky's SIP.

### III.

Lastly, we grant the motion to file an amicus brief.  Federal Rule of Appellate Procedure 29 permits filing an amicus brief, if granted leave, "during a court's initial consideration of a case on the merits." Fed. R. App. P. 29(a)(1).  The amici here have stated their interests, explained why their brief is desirable and relevant, and its filing will not result in the disqualification of any judge on this panel.  *See* Fed. R. App. P. 29(a)(2), (3).

### IV.

Accordingly, the motions to transfer are **DENIED**, the motions to stay are **GRANTED**, and the motions to file amicus briefs are **GRANTED**.

COLE, Circuit Judge, dissenting.  Because the EPA action in question is "based on a determination of nationwide scope or effect," I would transfer this case—including the motions to stay—to the D.C. Circuit.  Therefore, I respectfully dissent.

# I.  ANALYSIS

## A.  Motions to Transfer

### *1.  Scope of the Action*

In a consolidated motion, the EPA seeks to transfer both the Petitioners'—the Commonwealth of Kentucky's (Kentucky) and the Kentucky Energy and Environment Cabinet's (Kentucky Energy)—petitions for review to the D.C. Circuit per the Clean Air Act's venue provision.  (No. 23-3216, Mots. to Transfer, Dkt. 8; No. 23-3225, Mots. to Transfer, Dkt. 4 ("Mots. to Transfer").)  This provision divides challenges to EPA "actions" into three classifications:

1.  "Nationally applicable" actions—which must be filed in or transferred to the D.C. Circuit;

2.  "Locally or regionally applicable" actions—which must be filed in or transferred to the appropriate regional circuit; and

3.  "Locally or regionally applicable" actions that are (a) "based on a determination of nationwide scope or effect" and (b) accompanied by the EPA's published finding to that effect—which must be filed in or transferred to the D.C. Circuit.

42 U.S.C. § 7607(b)(1).  So, nationally applicable actions filed elsewhere must be transferred to the D.C. Circuit, while locally or regionally applicable actions must not, unless they fall into the third classification by having a published basis of nationwide scope or effect.  *Id.*

We first determine what the relevant "action" is for purposes of the Act's venue provision. While the EPA refers to the final rule in its entirety as the action, Petitioners, following the Fifth Circuit, characterizes the action more granularly as "[t]he disapproval of Kentucky's SIP," or state

implementation plan. Our court does not appear to have answered this question in a factually similar case, so we look to guidance from our sister circuits.

Ascertaining the scope of applicability of an action turns on the "face of [the] rule, rather than practical effect[.]" *ATK Launch Sys. Inc. v. EPA*, 651 F.3d 1194, 1195 (10th Cir. 2011) (discussing *Nat. Res. Def. Council v. Thomas,* 838 F.2d 1224, 1249 (D.C. Cir. 1988)). Courts look to "the 'regulations promulgated, or final action taken,' not the nature of the 'petition for review.'" *RMS of Ga., LLC v. EPA*, 64 F.4th 1368, 1373 (11th Cir. 2023).

Here, the challenged EPA action is the denial of multiple states' SIPs. Air Plan Disapprovals; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards, 88 Fed. Reg. 9336 (Feb. 13, 2022) ("Final SIP Denial"). By its own terms, this final agency action is a final rule regarding "the disapproval of State Implementation Plan (SIP) submissions for 19 states . . . and partial disapproval of elements of the SIP submission for two states[.]" *Id.* at 9336. While the nature of the petition for review here is limited to Kentucky, the "scope of the regulation" is much broader, and so limiting the "action" to Kentucky's state-specific challenge is inappropriate. *Thomas*, 838 F.2d at 1249.

Kentucky's view of the action might be persuasive if the Final SIP Denial were analogous to the action in the main case relied on by the Commonwealth, *American Road & Transportation Builders Association v. EPA*, 705 F.3d 453 (D.C. Cir. 2013). There, California challenged an EPA final rule disapproving of only one SIP: California's. *See* Revisions to the California State Implementation Plan, San Joaquin Valley Unified Air Pollution Control District, 76 Fed. Reg. 26609, 26609 (May 9, 2011) ("EPA is finalizing approval of revisions to . . . [one] portion of the California State Implementation Plan (SIP)"). The action, then, was necessarily only one state's SIP denial.

Nos. 23-3216/3225
-12-

But this is not the case here.  The Final SIP Denial is more closely aligned with other pollution- or good neighbor-related EPA actions that used a common methodology applied to various states, which were viewed as aggregate actions as opposed to actions by individual states. *See, e.g.*, *ATK Launch Sys.*, 651 F.3d at 1200 (transferring to D.C. a challenge to the inclusion of two counties in an action designating portions of 18 states as failing to comply with a quality standard because the action employed a single uniform regulatory approach across many states nationwide); *S. Ill. Power Coop. v. EPA*, 863 F.3d 666, 671 (7th Cir. 2017) (transferring to D.C. one entity's challenge to an action "of broad geographic scope containing air quality attainment designations covering 61 geographic areas across 24 states," which was "promulgated pursuant to a common, nationwide analytical method"); *W. Va. Chamber of Comm. v. Browner*, No. 98-1013, 1998 WL 827315, at *6–7 (4th Cir. Dec. 1, 1998) (transferring to D.C. a challenge to an action finding that 22 states' SIPs were inadequate because EPA applied a "common legal interpretation" and common analysis to its decision); *Cedar Falls Utils. v. EPA*, No. 16-4504, ECF Doc. No. 4491884, at 9 (8th Cir. Jan. 19, 2017) (stating that the challenged action is one that applied "a single regulatory interpretation and uniform methodology throughout 37 states and the District of Columbia for determining linkages between upwind emissions and downwind receptors pursuant to the Good Neighbor Provision").

So, I find the "action" in question to be the Final SIP Denial in its entirety.  But as discussed below, even assuming the "action" is the state-specific denial of Kentucky's SIP, the following analysis stands.

### 2. *Nationally Versus Locally or Regionally Applicable*

I proceed, then, to reviewing the action's—the Final SIP Denial's—scope of applicability. Relevant here are three categories of information.  First, the general four-part interstate transport

test.  Final SIP Denial, 88 Fed. Reg. at 9338.  Second, the specific methodology applied to determine compliance with the 4-part test, which the EPA has iterated over time.  *Id.*  And third, the state-by-state "facts and information, including information from the Agency, available to the state at the time of its submission," which was measured against categories one and two to determine compliance.  *Id.* at 9354.  Importantly, while the "general steps of this framework" (information category one) have continued across multiple agency actions, the framework "allow[s] for some methodological variation, and this can be seen in the evolution of the EPA's analytical process across its prior rulemakings" (information category two).  *Id.* at 9338.

The parties appear to disagree about which of these categories we analyze to answer the applicability question.  The parties' divergence on what the "action" is plays a significant role in this disagreement.  The Petitioners argue that application of the general 4-part test (information category one) to specific states alone does not necessitate the action be considered in the D.C. Circuit, and that the substance of the action—the denial of Kentucky's SIP—is Kentucky-specific. In the Petitioners' view, it is dispositive that the four-part test factored in Kentucky-specific information (information category three), that the regional EPA office was involved, and that Kentucky's SIP "involves facilities and emissions that are located exclusively in the Commonwealth."  (Ky. Opp. to Mots. to Transfer 11–12; Ky. Energy Opp. to Mots. to Transfer 12.)  Kentucky also says that "[t]he judicial-review statute requires that the challenged 'action' be of nationwide scope or effect," not the "bases for disapproving the SIP submissions" (information category two), as the EPA provides.  (Ky. Opp. to Mots. to Transfer 17 (quoting Mots. to Transfer 15 n.8).)  Taking all of this together, the Petitioners assert that the disapproval of Kentucky's SIP is locally or regionally applicable.

Kentucky compares the agency action at hand here to the action in *Motor Vehicle Manufacturers Association, Inc. v. Costle*, 647 F.2d 675 (6th Cir. 1981) (per curiam), where a regulation requiring certain automobile warranties was considered nationally applicable because "it applied nationwide." *Id.* at 677 (relying on *Lubrizol Corp. v. Train*, 547 F.2d 310, 316 (6th Cir. 1976) (discussing the action's "inten[t] to apply uniformly throughout the country" and that "no question of fact or law would vary by region")). Under this view, effectively no agency action that denies any state's SIP would be nationally applicable, as just about any SIP denial would necessarily involve "questions of facts that vary by region" due to the state-specific nature of a SIP.

The EPA, in turn, asserts that the current methodology applied to determine compliance with the four-part framework (information category two) is a national and uniform approach that applies to all states. In applying the state-specific information (category three) to this current methodology, it identified states—including Kentucky—that simply failed to carry their burden in the EPA's comprehensive plan. Because of this, the EPA says, the Final SIP Denial in aggregate is either a nationally applicable action or a locally or regionally applicable action based on a determination of nationwide scope or effect based primarily on its refreshed methodology (information category two). Through this lens, fewer actions would go to the regional circuit. But unlike the Petitioners, the EPA addresses the line-drawing problem directly in its motion, citing to *Thomas*, 838 F.2d at 1249, which rejected an argument that the de facto scope of regulation is controlling for purposes of determining venue under § 7607(b)(1)—an argument almost identical to the Petitioners' argument here.

As the majority states, "[w]hile the approval of SIPs is prototypically local or regional, there is no default rule for the disapproval of a SIP." (Maj. Op. 2–3 (citation omitted) (citing *Am.*

*Rd. & Transp. Builders Ass'n*, 705 F.3d at 455).)   Assuming that the Final SIP Denial is not

nationally applicable because it does not "apply" to, in a way that warrants action or requires

changes from, the whole "nation," I turn to whether the Final SIP Denial was "based on a

determination of nationwide scope or effect[.]"   § 7607(b)(1).

### 3.  Based on a Determination of Nationwide Scope or Effect

The line between "nationally applicable" and "based on a determination of nationwide

scope or effect" appears analytically thin upon reading the parties' arguments, so I turn to the

canons of construction to find space between these two venue classifications.

The surplusage canon is instructive, as it requires that "every word and every provision is

to be given effect" and that no provision "should needlessly be given an interpretation that causes

it to duplicate another provision or to have no consequence."  *Delek U.S. Holdings, Inc. v. United

States*, 32 F.4th 495, 498 (6th Cir. 2022) (quoting *Nielsen v. Preap*, 139 S. Ct. 954, 969 (2019)).

"The canon against surplusage is strongest when an interpretation would render superfluous

another part of the same statutory scheme."  *Chicago v. Fulton*, 141 S. Ct. 585, 591 (2021) (quoting

*Yates v. United States*, 574 U.S. 528, 543 (2015) (plurality opinion)).  So, this canon commands

us to give distinct meaning to each of the Act's three venue classifications.

This is not hard to do.  This question is not about the scope of the action—that is the prior

question on national versus local or regional applicability.  Here, instead, the question is about the

basis of the action:  whether, in disapproving at least parts of 21 states' implementation plans, the

EPA *relied on* a determination of nationwide scope or effect.  A review of the Final SIP Denial

reveals this answer is yes.

Preliminarily, Kentucky argues that the EPA's analysis consolidated the two-part test for

the "based on" classification into just the question of whether the EPA published its finding that

the action is based on a determination of nationwide scope or effect.  But the EPA's briefing shows

this is not the case:  The EPA asserts that its finding is both reasonable *and* published—addressing

both prongs of this test.  So, the EPA used the correct standard.

Applying this standard, the Final SIP Denial was based on a determination of nationwide

scope or effect.  In deciding whether the states complied with their good neighbor obligations, the

EPA "appl[ied] a uniform legal interpretation and *common, nationwide analytical methods* with

respect to the requirements . . . concerning interstate transport of pollution (*i.e.*, 'good neighbor'

requirements) to disapprove SIP submissions that fail to satisfy these requirements for the 2015

ozone [standards]."  Final SIP Denial, 88 Fed. Reg. at 9380 (emphasis added).  In a laymen's terms

understanding of the four-part interstate transport test, the EPA identified "monitoring sites"—

irrespective of state boundaries—and then identified "states that impact those[.]"  *Id.* at 9338.  To

identify these monitoring sites, the EPA "rel[ied] on the results from nationwide photochemical

grid modeling using a 2016 base year and 2023 projection year as the primary basis for its

assessment of air quality conditions and pollution contribution levels[.]"  *Id.* at 9380.  As the EPA

itself put it, "[t]he results of the 2016v2 modeling were used by the EPA as part of the Agency's

evaluation of state SIP submissions[.]"  *Id.* at 9339.

By intentional design, the EPA did not focus on an individual state's contribution simply

based on its existence as an individual state.  Instead, the EPA set national benchmarks for a

comprehensive plan that looked beyond state boundaries due to the nature of air quality issues.

For example, the EPA identified contributions by states "to downwind 8-hour ozone nonattainment

and maintenance receptors in 2023."  *Id.* at 9353–54.  Finding that individual states were not

committed to doing their part in enacting this nationwide plan, such as by measuring their impact

on the identified receptors by nature of being downwind, the EPA rejected their SIPs and explained

why. The Final SIP Denial is, then, "based on a determination of nationwide scope or effect."

This conclusion remains true even if the "action" is the Petitioners' or the Fifth Circuit's

view of the "action" (an individual state implementation plan denial as challenged by a given

state), because either action is "*based on* a determination of nationwide scope or effect[.]" § 7607

(b)(1) (emphasis added). The action provides "common, nationwide analytical methods" to ensure

coast-to-coast dedication to inter- and intrastate clean air. Final SIP Denial, 88 Fed. Reg. at 9380.

The surplusage canon undercuts Kentucky's argument to the contrary that "[t]he judicial-

review statute requires that the challenged 'action' *be of* nationwide scope or effect." (Ky. Opp.

to Mots. to Transfer 17 (emphasis added).) This is simply not what the statute textually instructs.

Instead, the action must be *based on a determination of* nationwide scope or effect. Interpreting

the nationwide scope or effect provision as requiring the action itself to *be of* nationwide scope or

effect, as Kentucky attempts, would "needlessly" give that provision "an interpretation that causes

it . . . to have no consequence." *Nielsen*, 139 S. Ct. at 969 (quoting A. Scalia & B. Garner, Reading

Law: The Interpretation of Legal Texts 174 (2012)). Such an interpretation "makes nonsense of"

the third venue classification: Asking if an action is of national scope and effect would be "entirely

redundant" to the first classification, which asks if an action is nationally applicable. *Kungys v.

United States*, 485 U.S. 759, 778 (1988) (plurality opinion). As the Petitioners' view "would

render superfluous another part of the same statutory scheme," *Fulton*, 141 S. Ct. at 591 (quoting

*Yates*, 574 U.S. at 543), we should reject this view in light of the EPA's view that "give[s] effect"

to "every word and every provision" of the venue classifications, *Delek*, 32 F.4th at 498 (quoting

*Nielsen*, 139 S. Ct. at 969).

That the EPA provided more detailed, individualized evaluations to each state does not alter this reality. To determine if a given state's plan adequately addressed its own role in this nationwide issue, "the contents of each individual state's submission were evaluated on their own merits[.]" Final SIP Denial, 88 Fed. Reg. at 9354. Whether or to what extent the merits of each state's plan were sufficient to comply with its good neighbor obligations was determined *based on* nationwide modeling. Recall the earlier discussion about the line-drawing problems in this type of analysis. Following the Petitioners' argument to its logical conclusion offers no meaningful limiting principle: Even where the agency measures every state in the country against benchmarks derived from boundary-agnostic modeling, announced for the first time in the same final rule, the action would remain in the geographical circuit filed.

I find the Petitioners' argument incompatible with both the "common core of nationwide policy judgments" applied in creating the benchmarks, *id.* at 9380, and the "controlling weight" of the agency's determination, *ABF Freight Sys. Inc. v. NLRB*, 510 U.S. 317, 324 (1994). At all points in its analysis, the EPA had "an eye to ensuring national consistency and avoiding inconsistent or inequitable results" between states. Final SIP Denial, 88 Fed. Reg. at 9381. Recognizing this action as one based on a determination of nationwide scope or effect respects Congress's intent that "the D.C. Circuit . . . review[s] matters on which national uniformity is desirable." *Texas v. EPA*, No. 23-60069, at *4 (5th Cir. May 1, 2023) (internal quotations omitted) (quoting *Texas v. EPA*, No. 10-60961, 2011 WL 710598, at *4 (5th Cir. Feb. 24, 2011)). That multiple circuit courts face the same question about this same final rule across the country is all the more reason to leverage the textual path and send this to the D.C. Circuit. *See, e.g.*, Petition for Review, *Texas v. EPA*, No. 23-60069 (5th Cir. Feb. 14, 2023); Petition for Review, *Arkansas v. EPA*, No. 23-1320 (8th Cir. Feb. 16, 2023); Petition for Review, *Utah v. EPA*, No. 23-9509

(10th Cir. Feb. 13, 2023); Petition for Review, *Pacificorp v. EPA*, No. 23-9512 (10th Cir. Feb. 23, 2023); Petition for Review, *Oklahoma v. EPA*, No. 23-9514 (10th Cir. Mar. 2, 2023); Petition for Review, *Utah Associated Mun. Power Sys. v. EPA*, No. 23-9520 (10th Cir. Mar. 15, 2023); Petition for Review, *Okla. Gas & Elec. Co. v. EPA*, No. 23-9521 (10th Cir. Mar. 16, 2023).

Nor am I moved by Kentucky's protest that it is challenging only the denial of its SIP. In form and function, its challenge is one to the modeling used to deny its SIP, a modeling established to be "nationwide." It is true that the EPA could have issued 21 individual rules. *See* Final SIP Denial, 88 Fed. Reg. at 9380 ("Based on these analyses, the EPA is disapproving SIP submittals . . . for 21 states."). But it did not, because the rule, methodology, and reasoning for the disapprovals remained consistent, just as the EPA's arguments in response to the SIP denial challenges across the country remain consistent. (Mots. to Transfer 8 ("Thus far, petitions for review of the Final [SIP Denial] have also been filed in the Fifth, []Eighth, and Tenth Circuits and EPA has filed, or intends to file, similar motions to transfer to the D.C. Circuit or dismiss those petitions, as well." (footnote omitted)).)

I would therefore grant the motion to transfer to the D.C. Circuit.

**B. Motions to Stay**

Having concluded that the D.C. Circuit is the appropriate venue for this case, I move on to consider how, if at all, that decision would impact our jurisdiction to review the Petitioners' motions to say. Venue and jurisdiction are distinct requirements:

> Subject-matter jurisdiction defines a court's "power to adjudicate," while venue specifies "where judicial authority may be exercised" based on "convenience" to the "litigants." The former asks "whether"—whether "the Legislature [has] empowered the court to hear cases of a certain genre?" The latter asks "where"— where should certain kinds of cases proceed?

*Brentwood at Hobart v. NLRB*, 675 F.3d 999, 1002 (6th Cir. 2012) (alteration in original) (citations omitted).   As geographic limitations, the Clean Air Act's venue provision asks the "where question." *Id.* (citing *Wachovia Bank v. Schmidt*, 546 U.S. 303, 316 (2006)).   We have held that "the issue of venue is not a jurisdictional issue," so "improper venue may be waived." *Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir. 1978) (finding that, in the criminal context, "venue is likewise a privilege granted to the accused rather than a jurisdictional prerequisite").   And "[i]n considering similar litigation-channeling provisions, the Supreme Court has uniformly treated them as venue, not jurisdictional, limitations." *Brentwood*, 675 F.3d at 1002.

While not jurisdictional, venue can be "inextricably bound up with the remedial decision" of whether a stay should issue.   *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 760 F.2d 312, 315 (D.C. Cir. 1985) (citation omitted).   The venue provision at issue here focuses less on "classic venue concerns," such as "choosing a convenient forum" so parties "will not be forced to defend an action in a faraway circuit."   *Brentwood*, 675 F.3d at 1002 (citation omitted) (interpreting agency venue provisions).   Instead, § 7607(b)(1) turns purely on the nature of the EPA's final action, vesting the D.C. Circuit with exclusive review of two classifications of final actions.   In so doing, Congress's goal was "to ensure uniformity in decisions concerning issues of more than purely local or regional impact." *Nat. Res. Def. Council v. EPA*, 512 F.2d 1351, 1357 (D.C. Cir. 1975) (Bazelon, J., concurring).

In this way, disposition of the Petitioners' motions to stay depends on whether we grant or deny the EPA's motion to transfer.   If we deny the EPA's motion to transfer (thereby concluding that we are the proper venue for the question), we would review and rule on the merits of the motions to stay—as the majority does.   But if we grant the EPA's motion to transfer, review of the merits of the motions to stay would be inappropriate.   As the D.C. Circuit puts it, where "[a]

number of other motions are also pending, but in view of our decision to grant the transfer, we will leave them for determination by the [circuit to which the petition is transferred]." *Indus. Union Dept., AFL-CIO v. Bingham*, 570 F.2d 965, 968 (D.C. Cir. 1977).

So, as I would grant the motion to transfer, I would transfer the entire case, including the motions to stay, to the D.C. Circuit. *See Tri-Cities Holdings LLC v. Tenn. Health Servs. and Dev. Agency*, 598 F. App'x 404, 407 (6th Cir. 2015) (reviewing orders from one district court after a separate district court had "granted the motion to transfer venue, and did not rule on the substantive motions"); *see also RMS*, 64 F.4th at 1375 (transferring entire challenge to the D.C. Circuit, including a pending motion to intervene). Passing the baton to the D.C. Circuit to review all the challenges to the Final SIP Denial ensures that the proper circuit is deciding all substantive motions aside from the original motion to transfer. In a case like this—rejecting SIPs from 21 states throughout eight of the ten EPA regions and ten federal judicial circuits, *see Final SIP Denial*, 88 Fed. Reg. at 9380—we should seek to carry out the intent of "centraliz[ing] review of national SIP issues" as opposed to causing "piecemeal review of national issues in the regional circuits, which risks potentially inconsistent results." *Texas v. EPA*, 2011 WL 710598, at *4.

## II. CONCLUSION

For foregoing reasons, I would transfer the petitions for review—and the motions to stay—to the D.C. Circuit, so I respectfully dissent.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk