No. 23-3641

IN THE

# United States Court of Appeals for the Sixth Circuit

ENERGY TRANSFER LP,

*Petitioner*,

*v.*

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY;
MICHAEL S. REGAN, Administrator,
United States Environmental Protection Agency,

*Respondents*.

On Petition for Review of the Final Rule of the
U.S. Environmental Protection Agency

## ENERGY TRANSFER'S RESPONSE IN OPPOSITION TO EPA'S MOTION TO DISMISS OR TRANSFER FOR IMPROPER VENUE

Aaron M. Streett
Matthew L. Kuryla
Beau Carter
BAKER BOTTS L.L.P.
910 Louisiana St.
Houston, Texas 77002
(713) 229-1855 (phone)
(713) 229-7855 (fax)
aaron.streett@bakerbotts.com

*Counsel for Energy Transfer LP*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... iii

LIST OF EXHIBITS IN APPENDIX ......................................................vi

GLOSSARY.............................................................................................. vii

INTRODUCTION ........................................................................................1

BACKGROUND ..........................................................................................2

ARGUMENT ...............................................................................................5

I.   The text of the Act's venue provision places review of the Michigan
     FIP in the Sixth Circuit. ...................................................................5

     A.   The relevant "action" is EPA's promulgation of the Michigan
          FIP. ...........................................................................................6

     B.   The plain text provides that review of implementation plans,
          like the Michigan FIP, is proper in the Sixth Circuit. .........................9

     C.   EPA's promulgation of the Michigan FIP is also locally or
          regionally applicable, *not* nationally applicable..................................13

II.  The Michigan FIP is not based on a determination of nationwide
     scope or effect..................................................................................15

III. EPA's motion to dismiss should be denied. ..................................20

CONCLUSION ..........................................................................................21

CERTIFICATE OF COMPLIANCE.......................................................22

CERTIFICATE OF SERVICE .................................................................22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*,
    898 F.3d 710 (6th Cir. 2018) ...........................................................11

*Barnhart v. Thomas*,
    540 U.S. 20 (2003)...........................................................................10

*EPA v. EME Homer City Generation, L.P.*,
    572 U.S. 489 (2014)...........................................................................2

*Fakhouri v. Ober Gatlinburg, Inc.*,
    821 F.3d 719 (6th Cir. 2016) ...........................................................10

*HEAL Utah v. EPA*,
    __ F.4th __, 2023 WL 5185608 (10th Cir. Aug. 14, 2023).................11

*Johnson v. Williams*,
    568 U.S. 289 (2013)..........................................................................20

*Lubrizol Corp. v. Train*,
    547 F.2d 310 (6th Cir. 1976) ...........................................................15

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. Costle*,
    647 F.2d 675 (6th Cir. 1981) ...........................................................15

*Nat'l Parks Conservation Ass'n v. EPA*,
    788 F.3d 1134 (9th Cir. 2015) .........................................................11

*Popovich v. Cuyahoga Cty. Ct. of Common Pleas*,
    276 F.3d 808 (6th Cir. 2002) ...........................................................20

*Royal Truck & Trailer Sales & Serv. v. Kraft*,
    974 F.3d 756 (6th Cir. 2020) ...........................................................18

*Sebelius v. Auburn Med. Ctr.*,
    568 U.S. 145 (2013)..........................................................................20

*Sierra Club v. Korleski*,
    681 F.3d 342 (6th Cir. 2012) .............................................................2

*St. Marys Cement Inc. v. EPA*,
   782 F.3d 280 (6th Cir. 2015) ...................................................................2, 14, 20

*Texas v. EPA*,
   829 F.3d 405 (5th Cir. 2016) ...........................................................*passim*

*Texas v. EPA*,
   983 F.3d 826 (5th Cir. 2020) ...............................................................19

*Train v. Nat. Res. Def. Council, Inc.*,
   421 U.S. 60 (1975) .........................................................................2

*Wyoming v. EPA*,
   __ F.4th __, 2023 WL 5214083 (10th Cir. May 16, 2023) ...............................11

## Federal Statutes

42 U.S.C. § 7409(b)(1) ........................................................................2

42 U.S.C. § 7410 ......................................................................1, 5, 10

42 U.S.C. § 7410(a)(1) ........................................................................7

42 U.S.C. § 7410(a)(2)(D) ....................................................................16

42 U.S.C. § 7410(a)(2)(D)(i) ................................................................16

42 U.S.C. § 7410(a)(2)(D)(i)(I) ..............................................................2

42 U.S.C. § 7410(c)(1) ...................................................................2, 7, 8

42 U.S.C. § 7410(k)(3) ........................................................................6

42 U.S.C. § 7602(y) ......................................................................3, 7, 8

42 U.S.C. § 7607(b)(1) ...................................................................*passim*

## Federal Regulations

40 C.F.R. pt. 52 ..............................................................................8

40 C.F.R. § 52.1186 ........................................................................8, 14

**Federal Register**

80 Fed. Reg. 65,292 (Oct. 26, 2015)............................................................3

87 Fed. Reg. 9,838 (Feb. 22, 2022) .....................................................3, 16

87 Fed. Reg. 20,036 (Apr. 6, 2022) .........................................................3

88 Fed. Reg. 9,336 (Feb. 13, 2023) .........................................................3

88 Fed. Reg. 36,654 (June 5, 2023) ..................................................*passim*

**Other Authorities**

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) ...........................................................10

EPA, *Response to Public Comments on Proposed Rule, 87 Fed. Reg. 20,036*, Docket No. EPA-HQ-OAR-2021-0668-1127 (Apr. 6, 2022)..........................................................................8

Fed. R. App. P. 15(a)(2)(C) .......................................................8

# LIST OF EXHIBITS IN APPENDIX

**Exhibit**                                                                    **Tab**

Order, *Kentucky v. EPA*, No. 23-3216 (6th Cir. July 25, 2023) ("*Kentucky SIP Order*").............................................................................A

Order, *Texas v. EPA*, No. 23-60069 (5th Cir. May 1, 2023) ("*Texas 2023*")..............................................................................................B

# GLOSSARY

| | |
|---|---|
| **EPA** | United States Environmental Protection Agency |
| **FIP** | Federal Implementation Plan |
| **NAAQS** | National Ambient Air Quality Standards |
| **NO$_X$** | Nitrogen Oxides |
| **SIP** | State Implementation Plan |

**INTRODUCTION**

This Court is the proper venue for Energy Transfer LP's challenge to EPA's issuance of a federal implementation plan (FIP) for Michigan. That is clear from the text of the Clean Air Act: EPA's actions "promulgating any implementation plan under section 7410" are properly filed in the regional circuits. 42 U.S.C. § 7607(b)(1). The same is true for actions, like the Michigan FIP, which are "locally or regionally applicable" and not based on a determination of "nationwide scope or effect." *Id.* EPA only has the authority to promulgate the Michigan FIP because it first disapproved Michigan's state implementation plan (SIP), which required EPA to make a series of highly intensive factual determinations specific to Michigan. Once disapproved, EPA stepped into Michigan's shoes to exercise the same state-specific authority it thought Michigan improperly exercised in its SIP. This Court recently held that venue for Kentucky's challenge to EPA's disapproval of its SIP was proper in the Sixth Circuit. Order at 2-6, *Kentucky v. EPA*, No. 23-3216 (6th Cir. July 25, 2023) ("*Kentucky SIP Order*"). The same result follows for Energy Transfer's challenge to EPA's promulgation of a FIP for Michigan.

Nevertheless, EPA has moved to dismiss or transfer this petition to the D.C. Circuit. But Energy Transfer's challenge to the Michigan FIP belongs in Michigan's regional circuit, not in the D.C. Circuit. Accordingly, the Court should deny EPA's motion and confirm that venue is proper in the Sixth Circuit.

## BACKGROUND

**A.** The Final Rule addresses the "good neighbor" requirement under the interstate-transport provision of the Clean Air Act, 42 U.S.C. § 7410(a)(2)(D)(i)(I). The Act charges EPA with implementing national ambient air quality standards (NAAQS) for pollutants like ozone. *Id.* § 7409(b)(1). Because the wind is "heedless of state boundaries," the good-neighbor provision requires that a state limit its emissions to the extent they contribute significantly to nonattainment in, or interfere with maintenance by, downwind states with respect to any NAAQS. *EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489, 496 (2014). Under the Act's structure of "cooperative federalism," each state is charged with submitting a SIP demonstrating how it will implement this provision. *See Sierra Club v. Korleski*, 681 F.3d 342, 343 (6th Cir. 2012) (quoting *Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 467 (6th Cir. 2004)); *see also Texas v. EPA*, 829 F.3d 405, 411 (5th Cir. 2016) ("*Texas 2016*").

So long as that SIP complies with the Act, EPA must approve it. *St. Marys Cement Inc. v. EPA*, 782 F.3d 280, 288 (6th Cir. 2015). If a SIP does not comply with the Act, EPA issues a rule disapproving it. *Train v. Nat. Res. Def. Council, Inc.*, 421 U.S. 60, 79 (1975). If EPA lawfully disapproves a state's SIP, EPA then has two years to promulgate a FIP for that state. *See* 42 U.S.C. § 7410(c)(1). A FIP is necessarily state-specific—it is "a plan (or portion thereof) promulgated by [EPA]

2

to fill all or a portion of a gap or otherwise correct all or a portion of an inadequacy in a [SIP]." *Id.* § 7602(y).

**B.**     EPA revised the ozone NAAQS in October 2015. 80 Fed. Reg. 65,292 (Oct. 26, 2015). Michigan then submitted its SIP in March 2019. *See* 87 Fed. Reg. 9,838, 9,847 (Feb. 22, 2022). The SIP contained data and analysis establishing that sources in Michigan were not significantly contributing to downwind nonattainment based on a variety of Michigan-specific data. *Id.* at 9,847-48. EPA disagreed and proposed to disapprove the SIP, countering Michigan's proffered datapoints with its own Michigan-specific evidence that Michigan was *not* meeting its obligations under the good-neighbor provision. *Id.* Shortly after proposing to disapprove Michigan's SIP, EPA proposed a FIP for Michigan. 87 Fed. Reg. 20,036 (Apr. 6, 2022). In EPA's Michigan FIP, EPA for the first time proposed to regulate non-electric-generating units (non-EGUs), like Energy Transfer's pipeline engines, under the good-neighbor provision. *Id.* at 20,039.

EPA finalized its disapproval of Michigan's SIP in February 2023. 88 Fed. Reg. 9,336, 9,354-61 (Feb. 13, 2023). The Federal Register notice contained SIP disapprovals for 20 other states as well. *Id.* Several states and industry petitioners challenged SIP disapprovals in regional circuits across the country, including in the Sixth Circuit. Of particular relevance, this Court held that Kentucky's challenge to EPA's disapproval of its SIP was likely to succeed on the merits, granted a stay, and

3

confirmed that the Sixth Circuit was the proper venue for Kentucky's challenge. *See Kentucky SIP Order* at 2-9. This Court thus joined the chorus of other circuits staying SIP disapprovals and denying EPA's attempts to have those challenges transferred to the D.C. Circuit.[1]

EPA finalized its Michigan FIP in June 2023, again packaging that action along with FIPs for 22 other states. *See* 88 Fed. Reg. 36,654 (June 5, 2023). States and industry petitioners filed challenges to individual state FIPs in regional circuits,[2] while others challenged all the FIPs at once and acquiesced to venue in the D.C. Circuit.[3] In the Sixth Circuit, Kentucky challenged the Kentucky FIP, Petition for Review, *Kentucky v. EPA*, No. 23-3624 (6th Cir. July 27, 2023), and Buckeye Power challenged the Ohio FIP and moved this Court to stay its implementation pending judicial review, Stay Motion, *Buckeye Power, Inc. v. EPA*, No. 23-2647 (6th Cir. Aug. 7, 2023).

---

[1] *See* Order, *Texas v. EPA*, No. 23-60069 (5th Cir. May 1, 2023) ("*Texas 2023*") (denying EPA's motion to transfer or dismiss challenge to EPA's disapproval of Texas's SIP); Order, *Arkansas v. EPA*, No. 23-1320 (8th Cir. Apr. 25, 2023) (same for EPA's disapproval of Arkansas's SIP); Order, *Missouri v. EPA*, No. 23-1719 (8th Cir. May 26, 2023) (same for EPA's disapproval of Missouri's SIP); Order, *ALLETE, Inc. v. EPA*, No. 23-1776 (8th Cir. May 26, 2023) (same for EPA's disapproval of Minnesota's SIP).

[2] *See, e.g.*, Petition for Review at 1-2, *Texas v. EPA*, No. 23-60300 (5th Cir. June 7, 2023) (challenging only the Texas FIP).

[3] *See, e.g.*, Petition for Review at 1-2, *Kinder Morgan, Inc. v. EPA*, No. 23-1181 (D.C. Cir. July 14, 2023) (challenging the entire Rule containing all 23 FIPs).

Energy Transfer challenges EPA's Michigan FIP and has moved for a stay of that FIP pending this Court's review.  Because venue is proper for that challenge in the Sixth Circuit, the Court should deny EPA's motion to send the petition to D.C.

## ARGUMENT

This Court has already concluded that venue for judicial review of EPA's individual SIP disapprovals is proper in the regional circuits.  *Kentucky SIP Order* at 2-7.  The same provision of the Act that governs venue for EPA action on SIPs also governs venue for EPA FIP actions and compels the same result here.  *See* 42 U.S.C. § 7607(b)(1).  That provision says that EPA action "promulgating any implementation plan under section 7410 of this title" or "any other final action . . . which is locally or regionally applicable may be filed only in the United States Court of Appeals for the appropriate circuit."  *Id.*  Challenges to "nationally applicable" actions "may be filed only in the United States Court of Appeals for the District of Columbia."  *Id.*  The Michigan FIP falls squarely within the former, so Energy Transfer's challenge is proper in the Sixth Circuit, not the D.C. Circuit.

## I.     The text of the Act's venue provision places review of the Michigan FIP in the Sixth Circuit.

This challenge to EPA's Michigan FIP belongs in Michigan's regional circuit, not in D.C.  In reaching that conclusion, this Court does not defer to EPA's interpretation of this venue provision.  *Kentucky SIP Order* at 2-3 (citing *Smith v. Aegon Cos. Pension Plan*, 769 F.3d 922, 928 (6th Cir. 2014)).  The Court, "not EPA,

'determine[s] both the scope of an action's applicability and whether it was based on a determination of nationwide scope or effect; that determination is made *de novo*." *Id.* at 3 (quoting *Texas v. EPA*, 983 F.3d 826, 833 (5th Cir. 2020) ("*Texas 2020*"), and citing *Texas 2016*, 829 F.3d at 421).

### A.    The relevant "action" is EPA's promulgation of the Michigan FIP.

Before applying the Act's venue provision, the Court must first determine the relevant "final action" under review. *See Kentucky SIP Order* at 3 ("What's important here is determining *what* 'final action' we are dealing with."); *Texas 2023* at 7 (making preliminary determination about what relevant "final action taken by the agency" that "the petitioner seeks to prevent or overturn"). EPA has attempted to gerrymander venue by tucking its Michigan FIP into an omnibus Federal Register notice with several other FIPs, claiming that a challenge to any of the FIPs is a challenge to all of them. That stratagem fails, as this Court already recognized with Kentucky's SIP disapproval, which was similarly combined with other SIP disapprovals. *Kentucky SIP Order* at 2-3. Energy Transfer's challenge is to the Michigan FIP, not any of the other FIPs, for the same reasons.

After disapproving Michigan's SIP, EPA "step[ped] into the shoes" of Michigan in promulgating its FIP under section 7410(k)(3). *See* 88 Fed. Reg. at 36,675. As a matter of law, EPA's SIP disapproval and its replacement FIP are two sides of the same coin. The Act defines a FIP as "a plan (or portion thereof)

promulgated by the [EPA] Administrator to fill all or a portion of a gap or otherwise correct all or a portion of an inadequacy in a [SIP]." 42 U.S.C. § 7602(y). Accordingly, a FIP may do only the work that a single state could have—and, in EPA's view, should have—done in the first place. *See id.* § 7410(c)(1) (requiring EPA to promulgate a FIP for any state that fails to submit an adequate SIP). And just as a SIP may not dictate emissions-control requirements beyond the borders of the state that prepares it, *see id.* § 7410(a)(1), so EPA may not promulgate a FIP that dictates emissions-control requirements outside of that state, *see id.* §§ 7410(c)(1), 7602(y).

That is why, although EPA established "FIP requirements" for multiple states at the same time, 88 Fed. Reg. at 36,656, the Final Rule is by statutory necessity a collection of individual, single-state FIPs. The Final Rule confirms that. *See id.* at 36,656-59 (describing the individual FIPs (plural) that EPA promulgated for states included in the Final Rule); *see also, e.g.*, *id.* at 36,657 (explaining that "[f]or seven states currently covered by [an earlier EPA rule] under SIPs or FIPs, the EPA is issuing new FIPs for two states (Alabama and Missouri) and amending existing FIPs for five states (Arkansas, Mississippi, Oklahoma, Texas, and Wisconsin)"). Because EPA's legal authority for a FIP is grounded in deficiencies in an individual state's SIP, EPA took a separate FIP action as to "each state" based on a prior separate SIP disapproval or finding that a state had failed to timely submit a SIP at all. *Id.* at

36,688-89.  And EPA codified the requirements in the state-specific subparts of 40 C.F.R. part 52 for the applicable states, including Michigan.  *Id*. at 36,892; *see* 40 C.F.R. § 52.1186 (Michigan FIP provision); EPA, *Response to Public Comments on Proposed Rule, 87 Fed. Reg. 20,036*, Docket No. EPA-HQ-OAR-2021-0668-1127, at 7 (Apr. 6, 2022) ("The EPA has promulgated the relevant FIPs in this action through provisions codified in each of the state-specific subparts of 40 Code of Federal Regulations part 52.").

Thus, for purposes of venue, the relevant "action" in the Final Rule is EPA's Michigan FIP, and not its FIPs for other states or all of the FIPs collectively.  *See* Petition for Review, *Energy Transfer v. EPA*, No. 23-3641 (6th Cir. Aug. 3, 2023) (specifically challenging, under Federal Rule of Appellate Procedure 15(a)(2)(C), only the part of the Final Rule that promulgated a FIP for Michigan).  The "legal source of [EPA]'s authority to take the challenged actions" is what determines the relevant agency action for purposes of venue under 42 U.S.C. § 7607(b)(1).  *See Texas 2023* at 7-8; *see Kentucky SIP Order* at 2-3.  Here, the source of that authority lies in sections 7410(c)(1) and 7602(y) of the Act, which authorize EPA to issue a FIP only for the particular deficiency in an individual state's SIP that EPA previously identified in its antecedent disapproval.

Though EPA "packaged [its Michigan FIP] with other states," "that doesn't matter because '[w]hat controls is the CAA,' '[a]nd the CAA is very clear: The

relevant unit of administrative action here is EPA's individual [FIP].'" *See Kentucky SIP Order* at 4 (quoting *Texas 2023* at 9). EPA's "chosen method of publishing an action"—here, alongside other FIPs for other states—"isn't controlling." *Texas 2023* at 9. Accordingly, the relevant "action" for venue-assessment purposes is EPA's promulgation of its Michigan FIP.

### B.    The plain text provides that review of implementation plans, like the Michigan FIP, is proper in the Sixth Circuit.

Under section 7607(b)(1), the "default presumption" is that the proper venue for review of EPA's Michigan FIP is this Court. *Kentucky SIP Order* at 6; *Texas 2016*, 829 F.3d at 424. That follows from a plain reading of section 7607(b)(1), which indicates that EPA's action in "*promulgating* any implementation plan" (i.e., a FIP) is presumptively reviewable only in the regional circuits. *See* 42 U.S.C. § 7607(b)(1) (emphasis added). No further inquiry into whether the action is "locally or regionally applicable" is thus required.

The text bears this out. The relevant sentence of the venue provision (in full, with the relevant parts underlined) says this:

> A petition for review of the Administrator's action in approving or promulgating any implementation plan under section 7410 of this title or section 7411(d) of this title, any order under section 7411(j) of this title, under section 7412 of this title, under section 7419 of this title, or under section 7420 of this title, or his action under section 1857c-10(c)(2)(A), (B), or (C) of this title (as in effect before August 7, 1977) or under regulations thereunder, or revising regulations for enhanced monitoring and compliance certification programs under section 7414(a)(3) of this title, or any other final action of the Administrator

> <u>under this chapter</u> (including any denial or disapproval by the Administrator under subchapter I) <u>which is locally or regionally applicable may be filed only in the United States Court of Appeals for the appropriate circuit.</u>

42 U.S.C. § 7607(b)(1). The question then becomes whether "which is locally or regionally applicable" only modifies "or any other final action of the Administrator under this chapter," or if it modifies the litany of actions specifically designated as properly challenged in the regional circuits. *See Texas 2016*, 829 F.3d at 419 n.16.

The last-antecedent canon gives the answer. Though "[s]ection 7607(b)(1) is not a model of statutory clarity," *id.* at 419, resort to this familiar grammatical rule helps clear things up: "[A] limiting clause or phrase" "should ordinarily be read as modifying only the noun or phrase that it immediately follows," absent "other indicia of meaning" overriding that presumption. *See Barnhart v. Thomas*, 540 U.S. 20, 27-28 (2003); *Fakhouri v. Ober Gatlinburg, Inc.*, 821 F.3d 719, 721-22 (6th Cir. 2016) (applying this interpretive canon and concluding that a limiting phrase modified only the immediately preceding noun); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 133-35 (2012) (describing this interpretive canon).

Applying that canon here means that "locally or regionally applicable" modifies only "any other final action," not "an action . . . promulgating any implementation plan under section 7410." Thus, the inquiry can end with observing that a FIP is such an "implementation plan," with no need to examine the action's

10

"applicab[ility]." Consistent with this reading, FIP challenges are routinely litigated in the regional circuits. *See Texas 2016*, 829 F.3d at 419-24 (reviewing a challenge to Texas and Oklahoma FIPs in the Fifth Circuit despite EPA's objection to venue); *see also Nat'l Parks Conservation Ass'n v. EPA*, 788 F.3d 1134 (9th Cir. 2015) (challenging EPA's Montana regional haze FIP in the Ninth Circuit); *Utah v. EPA*, No. 16-9541 (10th Cir. Jan. 11, 2021) (challenge to EPA's Utah regional haze FIP in the Tenth Circuit, dismissed after EPA's approval of subsequent SIP); *HEAL Utah v. EPA*, __ F.4th __, 2023 WL 5185608 (10th Cir. Aug. 14, 2023) (reviewing a challenge to EPA's withdrawal of the Utah FIP and approval of Utah's SIP in the Tenth Circuit); *Wyoming v. EPA*, __ F.4th __, 2023 WL 5214083 (10th Cir. May 16, 2023) (reviewing challenges to portions of EPA's Wyoming FIP and Wyoming's SIP in the Tenth Circuit).

True, this canon is "not an absolute" and can be "overcome by other indicia of meaning." *Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*, 898 F.3d 710, 717 n.4 (6th Cir. 2018) (quoting *Barnhart*, 540 U.S. at 26). But the indicia confirm the canon's application, and certainly do not overcome it. Section 7607(b)(1) is thorough and specific in what should be challenged and where. Consider the sentence prior, which also lists a litany of specific regulations which should be challenged in the D.C. Circuit, followed by: "or any other nationally applicable

regulations promulgated, or final action taken, by" EPA.  42 U.S.C. § 7607(b)(1).[4]

If Congress wanted the local-or-regional versus national applicability question to

come up in every case, it could have said that in far fewer words: "Challenges to

nationally applicable actions may be filed only in the D.C. Circuit.  Challenges to

locally or regionally applicable actions may be filed only in the regional circuits."

It did not.  Congress instead detailed actions under each provision and divvied them

up between the D.C. and regional circuits, then included the applicability language

to make sure it had not missed anything.  But where an action falls within one of the

specifically enumerated sections of the Act, the prescribed venue is the proper one,

regardless of geographic applicability.

The sentence *after* the relevant language also backs this up.  That sentence

says that where the venue provision would otherwise prescribe the regional circuits

as the proper venue, it can still be proper in the D.C. Circuit if "such action is based

---

[4] In full: "A petition for review of action of the Administrator in promulgating any national primary or secondary ambient air quality standard, any emission standard or requirement under section 7412 of this title, any standard of performance or requirement under section 7411 of this title[,] any standard under section 7521 of this title (other than a standard required to be prescribed under section 7521(b)(1) of this title), any determination under section 7521(b)(5) of this title, any control or prohibition under section 7545 of this title, any standard under section 7571 of this title, any rule issued under section 7413, 7419, or under section 7420 of this title, or any other nationally applicable regulations promulgated, or final action taken, by the Administrator under this chapter may be filed only in the United States Court of Appeals for the District of Columbia."  42 U.S.C. § 7607(b)(1).

on a determination of nationwide scope or effect and if in taking such action the Administrator finds and publishes that such action is based on such a determination." 42 U.S.C. § 7607(b)(1).  So where EPA's action arises under one of the provisions specified for regional-circuit review, there is still a way for a challenge to the action to end up in the D.C. Circuit.  But that path depends *not* on the geographic "applicability" of the action, but instead on whether EPA correctly found that its action was based on "a determination with nationwide scope or effect."  *See Kentucky SIP Order* at 5 (referring to this "exception" as a "steep hurdle" for EPA to prove applies).  This exception proves the rule: the listed actions (like FIPs) presumptively call for regional-circuit review, and the way they end up in the D.C. Circuit is through the "determination" exception, *not* through examining the geographic "applicab[ility]" of the action.

Accordingly, the Court need not delve into whether the Michigan FIP applies locally, regionally, or nationally.  It is enough that Congress mandated that EPA's action "promulgating any implementation plan" should be reviewed by the regional circuits.  The Michigan FIP fits the bill, so this Court is the right venue.

### C.    EPA's promulgation of the Michigan FIP is also locally or regionally applicable, *not* nationally applicable.

Even if the Court were required to examine the geographic "applicability" of the Michigan FIP, venue would still be proper in this Court because EPA's action was locally or regionally applicable.  The applicability inquiry "turns on the legal

impact" of the action, focusing on "the 'location' of the state or entity that the final action regulates." *Kentucky SIP Order* at 4 (quoting *Texas 2016*, 829 F.3d at 419). "When a final rule, by its terms, regulates in a single judicial district, the action is not nationally applicable." *Id.* (citing *Sierra Club v. EPA*, 926 F.3d 844, 849 (D.C. Cir. 2019); *Dalton Trucking, Inc. v. EPA*, 808 F.3d 875, 881 (D.C. Cir. 2015)).

Here, the legal impact of the Michigan FIP falls in Michigan alone. The Michigan FIP imposes FIP requirements only on owners and operators of sources "located in the State of Michigan and Indian country within the borders of the State." 88 Fed. Reg. at 36,891 (amending 40 C.F.R. § 52.1186). Because the "location of the persons or enterprises that the action[] regulate[s]" are in Michigan, the action is locally or regionally applicable. *See Kentucky SIP Order* at 5 (quoting *Texas v. EPA*, No. 10-60961, 2011 WL 710598, at *3 (5th Cir. Feb. 24, 2011)).

EPA's Michigan FIP, definitionally, cannot be nationally applicable. Contrast the Michigan FIP with a textbook nationally applicable rule: the national primary or secondary ambient air quality standards, which EPA establishes to start the whole SIP/FIP process in the first place. *See St. Marys Cement, Inc.*, 782 F.3d at 288. All challenges to such a "nationwide rule" should go to the D.C. Circuit to prevent variance among the circuits. *Id.* But concerns about nationwide conformity do not similarly arise when an action affects only "a single [s]tate." *Id.* Or consider two petitions for review that this Court said must be filed in the D.C. Circuit. In the first,

14

motor-vehicle manufacturers challenged a requirement that they "provide a warranty for defects" in "the emission control system in certain automobiles." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. Costle*, 647 F.2d 675, 676 (6th Cir. 1981). This regulation was nationally applicable, as it applied nationwide. *Id.* at 677. In the second, this Court held that exclusive review in the D.C. Circuit is appropriate when the regulations are "national in scope and intended to apply uniformly throughout the country" and "no question of fact or law would vary by region." *Lubrizol Corp. v. Train*, 547 F.2d 310, 316 (6th Cir. 1976).

Exercising the authority originally afforded to Michigan, EPA could not impose a FIP that extended beyond Michigan's borders. EPA's Michigan FIP is thus no less "locally or regionally applicable" than EPA's disapproval of Michigan's SIP. Just as EPA's disapprovals of SIPs, "by their very nature, concern each State's plan," EPA's next step of promulgating a plan to replace the disapproved SIP does too. *Kentucky SIP Order* at 5. The action was locally or regionally applicable, so venue is proper in the Sixth Circuit.

## II.    The Michigan FIP is not based on a determination of nationwide scope or effect.

As discussed above, EPA may establish venue in the D.C. Circuit over even local or regional actions if it correctly finds that the final action is "based on a determination of nationwide scope or effect." 42 U.S.C. § 7607(b)(1). Whether EPA's action is based on a determination of nationwide scope or effect is a "context-

specific question," and EPA faces a "steep hurdle" to surmount the presumption that regional actions should remain in the regional circuits. *Kentucky SIP Order* at 5. Because EPA cannot do so here, it cannot "overcome the 'default presumption' that petitions for review of locally or regionally applicable actions 'may only be filed in the United States Court of Appeal for the appropriate circuit.'" *Texas 2023* at 11 (citations omitted).

The reason is simple. Because a FIP may only replace a SIP, EPA's Michigan FIP is necessarily grounded in the same state-specific determinations as EPA's disapproval of Michigan's SIP. Under the good-neighbor provision, the statutory obligation is to "prohibit[] . . . any source or other type of emissions activity *within the State* from emitting any air pollutant in amounts which will—(I) contribute significantly to nonattainment in, or interfere with maintenance by, any other State with respect to any such [NAAQS]." 42 U.S.C. § 7410(a)(2)(D)(i) (emphasis added). Thus, in disapproving Michigan's SIP, EPA explained that "Michigan was required to analyze emissions more fully from the sources and other emissions activity from within the state to determine whether its contributions were significant" and concluded that Michigan had not done so. 87 Fed. Reg. at 9,867. In promulgating the replacement FIPs, EPA claimed to undertake that same analysis—"evaluat[ing] each state's contribution," as required by section 7410(a)(2)(D)—and reached different conclusions for each state. 88 Fed. Reg. at

36,677.  The determinations were state-specific, by EPA's own description.  "EPA evaluated each state's contribution," *id*. at 36,677, and explained that "each state must be held to the elimination of its own significant contribution," *id*. at 36,688.

Moreover, EPA's FIP remedy for each state—*i.e.*, a certain amount of $NO_X$ emissions reductions from sources within the state—was based on a determination of each "specific" state's individual "significant contribution" as calculated by EPA. *Id*. at 36,708.  While EPA used a "uniform level of $NO_X$ emissions control stringency across all of the linked states" to examine reductions for each state, *id*. at 36,719, the final emission budget for each individual state was necessarily state-specific and included EPA's individual "evaluat[ion] [of] the potential for over-control . . . for each state for each period that downwind nonattainment and maintenance problems persist (*i.e.*, 2023 and 2026)," *id*. at 36,750; *see also id*. (explaining that "over-control" analysis is "based on particularized, record evidence on an as-applied [state-specific] basis").

EPA's purported "nationwide" determinations (at 22) all focus on its application of a uniform, nationwide test to evaluate each state's emissions.  But this Court and its sister circuits have already concluded that these determinations are necessarily state-specific given EPA's authority under the Act.  *See Kentucky SIP Order* at 6 (rejecting EPA's reliance on its "nationally uniform framework" because EPA explicitly reviewed each SIP "in light of the facts and circumstances of *each*

17

*particular state's* submission" (internal citation and quotations omitted)); *Texas 2023* at 11 (similarly rejecting EPA's nationwide-scope arguments). The same result follows as to the Michigan FIP, where EPA similarly used a national control standard to evaluate and establish the emissions reductions required for Michigan and every other state on a state-by-state basis.

These are "intensely factual determinations" that are specific to Michigan and not determinations of nationwide scope or effect. *See Kentucky SIP Order* at 6 (quoting *Texas 2016*, 829 F.3d at 421). Or as the Fifth Circuit put it in confirming venue over Texas and Oklahoma FIPs, "[t]hese determinations are all related to the particularities of the emission sources in" those states and their alleged impact on downwind air quality. *Texas 2016*, 829 F.3d at 421. Consequently, as with EPA's disapproval of Kentucky's SIP, "EPA fails to rebut the 'default presumption of § 7607(b)(1),' which 'requires' that this Circuit review locally or regionally applicable actions." *Kentucky SIP Order* at 6 (quoting *Texas 2016*, 829 F.3d at 424).

The weakness of EPA's counterarguments is revealed by its starting point: legislative history laundered through an out-of-circuit unpublished case. Mot. 22. But the text of the Act's venue provision is clear, so the Court need not "resort to" the "often treacherous path" of relying on legislative history. *See Royal Truck & Trailer Sales & Serv. v. Kraft*, 974 F.3d 756, 761 (6th Cir. 2020); *see also Texas 2016*, 829 F.3d at 422 & n.27 (confirming the legislative history favors review of

implementation plans in the regional circuit).  EPA falters next by citing a single D.C. Circuit judge's concurrence calling for a "highly deferential standard" of review over EPA's "decisions to direct challenges on matters of national importance to the D.C. Circuit."  Mot. 22.  But this Court rejected that concurrence's views in confirming that venue is proper in the Sixth Circuit for Kentucky's challenge to its SIP disapproval.  *Kentucky SIP Order* at 3.  So have other courts.  *See Texas 2020*, 983 F.3d at 833 (addressing and rejecting the D.C. Circuit concurrence because it "does not comport with the text of the statute").  Though EPA would always prefer that courts rubberstamp its decisions, this Court has already taken a different tack, *Kentucky SIP Order* at 3, so it should reject EPA's requests for deference consistent with that approach.

***

EPA's Michigan FIP is properly challenged in Michigan's regional circuit.  It falls squarely within the plain text of the Act's regional-circuit venue language.  It is locally or regionally applicable.  And EPA cannot meet the high bar of showing that the Michigan FIP was based on a determination of nationwide scope or effect. The Court should thus deny EPA's motion to send this petition to D.C.[5]

---

[5] In the alternative, the Court could carry EPA's motion with the case for the merits panel to resolve this issue.  That accords with the approach recently taken by several other circuits in the SIP context.  *See* Order, *Nevada Cement Co. v. EPA*, No. 23-0682 (9th Cir. July 3, 2023) (granting stay and carrying transfer motion with the case in challenge to EPA's disapproval of Nevada's SIP); Order, *Utah v. EPA*, No.

### III. EPA's motion to dismiss should be denied.

EPA's motion hints that the Court should dismiss, rather than transfer, the petition. But it never argues that section 7607(b)(1) is jurisdictional, instead frequently referring to it as a venue provision. *See* Mot. 2, 11-12. Any argument that section 7607(b)(1) is jurisdictional is thus forfeited. *See Johnson v. Williams*, 568 U.S. 289, 299 (2013) (arguments are forfeited where they are "made in passing without proper development"); *Popovich v. Cuyahoga Cty. Ct. of Common Pleas*, 276 F.3d 808, 824 (6th Cir. 2002) ("[S]keletal contentions are best left unaddressed.").

In any event, section 7607(b)(1) is not jurisdictional. It speaks not of jurisdiction, let alone *clearly* of jurisdiction, which the Supreme Court has said is required for a provision to be considered jurisdictional. *See Sebelius v. Auburn Med. Ctr.*, 568 U.S. 145, 153 (2013). This Court has confirmed as much, noting that section 7607(b)(1) is a "claim-processing rule" that "does not speak" to "jurisdiction." *St. Marys Cement*, 782 F.3d at 287. Thus, even if the Court agrees with EPA that these petitions should be in the D.C. Circuit, the proper remedy is to transfer rather than dismiss the petition.

---

23-9509 (10th Cir. Apr. 27, 2023) (same for EPA's disapproval of Utah's SIP); Order, *Oklahoma v. EPA*, No. 23-9514 (10th Cir. Apr. 27, 2023) (same for EPA's disapproval of Oklahoma's SIP); *Alabama v. EPA*, No. 23-11173 (11th Cir. July 12, 2023) (same for EPA's disapproval of Alabama's SIP).

## CONCLUSION

The Court should deny EPA's motion and enter an order confirming that the Sixth Circuit is the proper venue for Energy Transfer's petition for review challenging the Michigan FIP.

September 8, 2023                    Respectfully submitted,

_/s/ Aaron M. Streett_
Aaron M. Streett
Matthew L. Kuryla
Beau Carter
BAKER BOTTS L.L.P.
910 Louisiana St.
Houston, Texas 77002
(713) 229-1855 (phone)
(713) 229-7855 (fax)
aaron.streett@bakerbotts.com

_Counsel for Energy Transfer LP_

## CERTIFICATE OF COMPLIANCE

The undersigned counsel states that this response complies with Fed. R. App. P. 27(d)(2)(A) because it contains 5,182 words, excluding the items allowed to be excluded pursuant to Fed. R. App. P. 32(f), as counted by a word processing system and, therefore, is within the word limit. This response also complies with typeface requirements of Fed. R. App. P. 32(a)(5) because it has been prepared in a proportionally spaced typeface in 14-point Times New Roman font.

Dated: September 8, 2023

*/s/ Aaron M. Streett*
Aaron M. Streett
*Counsel for Energy Transfer LP*

## CERTIFICATE OF SERVICE

I certify that on September 8, 2023, the foregoing was electronically filed through this Court's CM/ECF system, which will send a notice of filing to all registered users.

*/s/ Aaron M. Streett*
Aaron M. Streett
*Counsel for Energy Transfer LP*

22

# Appendix

Appendix A

Nos. 23-3216/3225

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jul 25, 2023
DEBORAH S. HUNT, Clerk

COMMONWEALTH OF KENTUCKY,               )
                                        )
        Petitioner (No. 23-3216),       )
                                        )
                                        )
KENTUCKY ENERGY AND ENVIRONMENT         )
CABINET,                                )
                                        )
        Petitioner (No. 23-3225),       )               O R D E R
                                        )
v.                                      )
                                        )
UNITED STATES ENVIRONMENTAL             )
PROTECTION AGENCY, et al.,              )
                                        )
        Respondents.                    )

Before: COLE, McKEAGUE, and NALBANDIAN, Circuit Judges.


In these related cases, petitioners the Commonwealth of Kentucky and the Kentucky Energy and Environment Cabinet seek review of an Environmental Protection Agency final action partially disapproving Kentucky's state implementation plan ("SIP") for failing to meet certain requirements of the Clean Air Act ("CAA"). Air Plan Disapprovals; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards, 88 Fed. Reg. 9336 (Feb. 13, 2022) (the "Final Rule"). The Environmental Protection Agency and its Administrator, Michael S. Regan (collectively, "EPA") move to transfer the actions to the United States Court of

Appeals for the District of Columbia Circuit pursuant to the CAA's venue provision, 42 U.S.C. § 7607(b)(1), or, in the alternative, to dismiss for improper venue. Petitioners oppose transfer, and EPA replies. Petitioners move to stay enforcement of EPA's denial of Kentucky's SIP pending our review. EPA opposes a stay, and Petitioners reply. In addition, the States of New York, Connecticut, Delaware, Maryland, New Jersey, the Commonwealth of Massachusetts, and the District of Columbia move to file an amicus brief in support of EPA and in opposition to a stay and have tendered their brief.

In all, we have three motions here: (1) the motion to transfer venue; (2) the motion to stay enforcement pending appeal; and (3) the motion to file an amicus brief. We address each in turn.

# I.

First, the motion to transfer. Venue for judicial review of challenges to the CAA is governed by 42 U.S.C. § 7607(b)(1), which provides, in pertinent part, that review of "nationally applicable regulations promulgated, or final action taken, by the [EPA] Administrator under this chapter may be filed only in the [D.C. Circuit]." However, "[a] petition for review of the Administrator's action in approving or promulgating any [SIP] . . . or any other final action of the Administrator under this chapter (including any denial or disapproval . . . under subchapter I) which is locally or regionally applicable may be filed only in the . . . appropriate circuit." *Id.* An exception to this rule is that a locally or regionally applicable final action "may be filed only in the [D.C. Circuit] if such action is based on a determination of nationwide scope or effect and if in taking such action the Administrator finds and publishes that such action is based on such a determination." *Id.*

EPA argues that the Final Rule is nationally applicable or, alternatively, that it is based on a determination of nationwide scope or effect; Petitioners disagree. We do not defer to an agency's

interpretation of a venue statute.  *See Smith v. Aegon Cos. Pension Plan*, 769 F.3d 922, 928 (6th Cir. 2014) ("[T]he Secretary is no more expert than this Court is in determining whether a statute proscribes venue selection.").  There is some debate as to whether a rule disapproving multiple states' SIPs is regionally or nationally applicable.  While the approval of SIPs is prototypically local or regional, *see Am. Rd. & Transp. Builders Ass'n v. EPA*, 705 F.3d 453, 455 (D.C. Cir. 2013), there is no default rule for the *disapproval* of a SIP.  The text of § 7607(b)(1) says that "any other final action of the Administrator under this chapter (including any denial or disapproval [of a SIP]) which is locally or regionally applicable" must be filed "in the United States Court of Appeals for the appropriate circuit."  42 U.S.C. § 7607(b)(1); *see generally id.* § 7410 (governing SIPs for "national primary and secondary ambient air quality standards").  In making that assessment, we, not EPA, "determine[] both the scope of an action's applicability and whether it was based on a determination of nationwide scope or effect," *State v. EPA*, 983 F.3d 826, 833 (5th Cir. 2020); that determination is made de novo, *Texas v. EPA*, 829 F.3d 405, 421 (5th Cir. 2016).

What's important here is determining *what* "final action" we are dealing with.  42 U.S.C. § 7607(b)(1); *see Texas v. EPA*, No. 23-60069, slip op. at *7 (5th Cir. Feb. 14, 2023) (order) (determining preliminarily what relevant "final action taken by the agency [] the petitioner seeks to prevent or overturn" (quoting *Texas*, 829 F.3d at 419)).

Under the CAA—the applicable statute granting EPA's authority over the challenged action here (the SIP denial)—implementing National Ambient Air Quality Standards ("NAAQS") requires three distinct steps.  First, EPA promulgates or revises NAAQS.  *See* 42 U.S.C. § 7409(b)(1).  Second, the states submit SIPs that implement those NAAQS.  *See id.* § 7410(a).  And third, EPA approves or disapproves each SIP.  *See id.* § 7410(k)(1)–(3).

Kentucky challenges the final step:  EPA's disapproval of each state's SIP.  *See id.* § 7410(k)(1)–(3) (specifying how EPA will work with each "State" individually to approve a SIP). EPA, under § 7410(k)(3), separately considered and disapproved Kentucky's SIP because it believed that the state did not comply with the CAA's good neighbor provision.  True, the Final Rule packaged Kentucky's disapproval with other states.  *See* Final Rule, 88 Fed. Reg. 9,336.  But that doesn't matter because "[w]hat controls is the CAA," "[a]nd the CAA is very clear:  The relevant unit of administrative action here is EPA's individual SIP denials."  *Texas*, No. 23-60069, at *9.  That "final action"—EPA's denial of *Kentucky's* SIP—is what we review.  42 U.S.C. § 7607(b)(1).  With that, we turn to § 7607(b)(1)'s analysis in two steps.

## A.

To start, we determine whether EPA's SIP disapproval was "nationally applicable" or "locally or regionally applicable."  *Id.*  That question "turns on the legal impact" of the SIP disapproval and focuses on the "location" of the state or entity that the final action regulates. *Texas*, 829 F.3d at 419 (citation omitted).  When a final rule, by its terms, regulates in a single judicial district, the action is not nationally applicable.  *See Sierra Club v. EPA*, 926 F.3d 844, 849 (D.C. Cir. 2019) (finding an action "not nationally applicable" when it involved a "petition for objection to a single permit for a single plant located in a single state"); *Dalton Trucking, Inc. v. EPA*, 808 F.3d 875, 881 (D.C. Cir. 2015) at 881 (finding agency rules that, on their face, "regulate only nonroad engines and vehicles that are owned or operated *in* [one state]" were not nationally applicable); *Texas*, 706 F. App'x at 163; *see W. Oil & Gas Ass'n v. EPA*, 633 F.2d 803, 807 (9th Cir. 1980) (rejecting that promulgations affecting one state were "nationwide in scope or effect" because "[t]hey apply locally, not nationally").

As far as "the location of the persons or enterprises that the action[s] regulate[]," *Texas v. EPA*, No. 10-60961, 2011 WL 710598, at *3 (5th Cir. Feb. 24, 2011), here, the "legal impact" is local or regional, *Texas*, 829 F.3d at 419. Just as "most . . . approvals of SIPs or SIP revisions . . . unequivocally fall in the 'locally or regionally applicable' category," *Am. Rd. & Transp. Builders Ass'n*, 705 F.3d at 456, so too does the disapproval of SIPs. That's because the State Implementation Plans, by their very nature, concern each State's plan. *See* 42 U.S.C. § 7410(k)(1)–(3). Because the denial and legal impact of Kentucky's SIP affects only Kentucky— that is, it does not concern the nation, let alone any other state—the final action is "locally or regionally applicable." 42 U.S.C. § 7607(b)(1).

## B.

We next turn to § 7607(b)(1)'s exception. Even if the agency's action is local or regional, the challenge "may be filed only in" the D.C. Circuit if the EPA can show two conditions. *Id.* EPA must show that the local or regional "final action" here (EPA's disapproval of Kentucky's SIP) is both (1) "based on a determination of nationwide scope or effect" and (2) properly published. 42 U.S.C. § 7607(b)(1). If the answer to either condition is no, we keep the case here. *Texas*, 829 F.3d at 421. Because EPA cannot meet the first condition, we need not consider the second.

Whether the determination is of nationwide scope or effect is a "context-specific question," *Texas v. EPA*, 706 F. App'x 159, 165 (5th Cir. 2017), which requires us to look at "EPA's factual conclusions or expertise" underlying the determination. *Texas*, 829 F.3d at 422. In proving that condition, EPA faces a "steep hurdle." *Texas*, No. 23-60069, at *11. That's because SIP disapprovals are usually "highly fact-bound and particular to the individual state." *Texas*, 829 F.3d at 421 n.24. And so it is here.

The Final Rule states that it reviewed approaches (like those that EPA believed to vary from its nationally uniform framework) "in light of the facts and circumstances of *each particular state's* submission." Final Rule, 88 Fed. Reg. at 9340 (emphasis added); *id.* at 9354 ("[T]he contents of each individual state's submission were evaluated on their own merits."). So EPA's disapproval here was based "on a number of intensely factual determinations" unique to Kentucky. *Texas*, 829 F.3d at 421. The detailed reasoning for disapproval is not even contained in the Final Rule; rather, EPA recommends that any questions on "specific SIP submissions" be directed to the Regional Offices which conducted the analysis. Final Rule, 88 Fed. Reg. at 9337. And the reasoning that the Final Rule does provide for *Kentucky*'s SIP denial is "based on a determination" involving Kentucky and Kentucky alone. *See, e.g.*, *id.* at 9356 ("*Kentucky* is projected to be linked above 1 percent of the NAAQS[.]" (emphasis added); *id.* ("*Kentucky* is linked above 1 ppb to a violating-monitor receptor." (emphasis added).) These "intensely factual determinations" do not have nationwide scope or effect because they all relate "to the particularities of the emissions sources in" Kentucky—not in any other state. *Texas*, 829 F.3d at 421.

Because Kentucky's SIP denial was based on a determination of local scope or effect, EPA fails to rebut the "default presumption of § 7607(b)(1)," which "requires" that this Circuit review locally or regionally applicable actions. *Id.* at 424. Thus, we agree with other circuits to have considered this issue that transfer is not warranted. *See Texas*, No. 23-60069, at *2; *Arkansas v. EPA*, No. 23-1320 (8th Cir. Feb. 16, 2023).

## II.

We next address the motion to stay enforcement pending appeal. We consider four factors in determining whether to issue a stay pending appeal: (1) "whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits"; (2) the likelihood the "applicant will

be irreparably injured absent a stay"; (3) "whether issuance of the stay will substantially injure" other interested parties; and (4) "where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The first two factors "are the most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009).

First, Petitioners must show a strong likelihood of success on their claim that EPA acted arbitrarily, capriciously, or unlawfully. *Hilton*, 481 U.S. at 776; *see Maryland v. EPA*, 958 F.3d 1185, 1196 (D.C. Cir. 2020) (per curiam) ("[Courts] apply the same standard of review under the [CAA] as [they] do under the Administrative Procedure Act.") (quoting *Allied Loc. & Reg'l Mfrs. Caucus v. U.S. EPA*, 215 F.3d 61, 68 (D.C. Cir. 2000)). An agency action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). While the standard is deferential, the court must still assess "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* (quoting *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974)).

At this juncture, we conclude that Kentucky has made a strong showing that it is likely to succeed on its arbitrary-and-capricious claim because EPA based its disapproval of Kentucky's SIP in part on modeling data and policy changes developed after Kentucky had submitted it. EPA may have valid policy reasons for continuing to evaluate upwind contribution at the one percent of its ambient air quality threshold; nevertheless, "[t]he reasoned agency decisionmaking that the [CAA] demands does not allow the EPA to keep moving the finish line." *New York v. EPA*, 964

F.3d 1214, 1223 (D.C. Cir. 2020) (citation omitted).  And "agencies should provide regulated parties 'fair warning of the conduct [a regulation] prohibits or requires.'"  *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 156 (2012) (alteration in original) (quoting *Gates & Fox Co. v. Occupational Safety & Health Rev. Comm'n*, 790 F.2d 154, 156 (D.C. Cir. 1986)).  In fact, EPA has stated in the past that, "[i]n general, [it] has not required changes to submitted SIPs that result from changes in factors and methodologies that occur after the SIP is submitted." Approval and Promulgation of Air Quality Implementation Plans; District of Columbia, Maryland, Virginia, 68 Fed. Reg. 19106, 19120 (Apr. 17, 2003).  But that is precisely what it appears to have done here, with both the modeling data and the contribution threshold, and Petitioners are likely to show that such conduct was arbitrary and capricious.

Petitioners also argue that EPA exceeded its authority under the CAA by failing to act on Kentucky's SIP submission within the statutory eighteen-month window and by abandoning its purely ministerial role in approving or disapproving states' SIPs.  The Fifth Circuit found that the states were likely to succeed on the latter argument.  *See Texas*, 23-60069, at *14–17.  Given that Petitioners have shown a likelihood of success on their arbitrary and capricious arguments, we do not address those other arguments.

Petitioners argue that they face irreparable harm absent a stay.  And we are persuaded by their "irreparable injury" claims.  We have held that "invasions of state sovereignty . . . likely cannot be economically quantified, and thus cannot be monetarily redressed," and as such constitute irreparable harm.  *Kentucky v. Biden*, 23 F.4th 585, 611–12 n.19 (6th Cir. 2022) ("*Biden I*"); *see also Georgia v. Pruitt*, 326 F. Supp. 3d 1356, 1367 (S.D. Ga. 2018) (order) (collecting cases where loss of state sovereignty was deemed irreparable harm).  Petitioners are also likely to establish that Kentucky faces irreparable injury due to unrecoverable compliance costs, which it

faces immediately. *See Commonwealth v. Biden*, 57 F.4th 545, 556 (6th Cir 2023). Finally, Petitioners provide evidence that Kentucky residents will face higher prices and that Kentucky's power grid faces destabilization. *See Texas*, 829 F.3d at 434 ("[P]lant closures [and] the threat of grid instability and potential brownouts alone constitute irreparable injury."); *see also Biden I*, 23 F.4th at 599 ("[S]tates also have a recognized quasi-sovereign interest in the health and economic well-being of their populaces.") (cleaned up). While EPA provides compelling evidence that such alleged harm may ultimately be minimal, the threats to state sovereignty and the loss of unrecoverable compliance costs weigh in favor of granting a stay.

The final two factors "merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. We find Petitioners' assertions weightier. A stay will not harm EPA because Kentucky's SIP established that it complies with the CAA's good neighbor provision based on a standard EPA endorsed. Further, EPA itself delayed disapproving Kentucky's SIP.

### III.

Lastly, we grant the motion to file an amicus brief. Federal Rule of Appellate Procedure 29 permits filing an amicus brief, if granted leave, "during a court's initial consideration of a case on the merits." Fed. R. App. P. 29(a)(1). The amici here have stated their interests, explained why their brief is desirable and relevant, and its filing will not result in the disqualification of any judge on this panel. *See* Fed. R. App. P. 29(a)(2), (3).

### IV.

Accordingly, the motions to transfer are **DENIED**, the motions to stay are **GRANTED**, and the motions to file amicus briefs are **GRANTED**.

COLE, Circuit Judge, dissenting.  Because the EPA action in question is "based on a determination of nationwide scope or effect," I would transfer this case—including the motions to stay—to the D.C. Circuit.  Therefore, I respectfully dissent.

# I. ANALYSIS

## A. Motions to Transfer

### 1. Scope of the Action

In a consolidated motion, the EPA seeks to transfer both the Petitioners'—the Commonwealth of Kentucky's (Kentucky) and the Kentucky Energy and Environment Cabinet's (Kentucky Energy)—petitions for review to the D.C. Circuit per the Clean Air Act's venue provision.  (No. 23-3216, Mots. to Transfer, Dkt. 8; No. 23-3225, Mots. to Transfer, Dkt. 4 ("Mots. to Transfer").)  This provision divides challenges to EPA "actions" into three classifications:

1. "Nationally applicable" actions—which must be filed in or transferred to the D.C. Circuit;

2. "Locally or regionally applicable" actions—which must be filed in or transferred to the appropriate regional circuit; and

3. "Locally or regionally applicable" actions that are (a) "based on a determination of nationwide scope or effect" and (b) accompanied by the EPA's published finding to that effect—which must be filed in or transferred to the D.C. Circuit.

42 U.S.C. § 7607(b)(1).  So, nationally applicable actions filed elsewhere must be transferred to the D.C. Circuit, while locally or regionally applicable actions must not, unless they fall into the third classification by having a published basis of nationwide scope or effect.  *Id.*

We first determine what the relevant "action" is for purposes of the Act's venue provision. While the EPA refers to the final rule in its entirety as the action, Petitioners, following the Fifth Circuit, characterizes the action more granularly as "[t]he disapproval of Kentucky's SIP," or state

implementation plan. Our court does not appear to have answered this question in a factually similar case, so we look to guidance from our sister circuits.

Ascertaining the scope of applicability of an action turns on the "face of [the] rule, rather than practical effect[.]" *ATK Launch Sys. Inc. v. EPA*, 651 F.3d 1194, 1195 (10th Cir. 2011) (discussing *Nat. Res. Def. Council v. Thomas,* 838 F.2d 1224, 1249 (D.C. Cir. 1988)). Courts look to "the 'regulations promulgated, or final action taken,' not the nature of the 'petition for review.'" *RMS of Ga., LLC v. EPA*, 64 F.4th 1368, 1373 (11th Cir. 2023).

Here, the challenged EPA action is the denial of multiple states' SIPs. Air Plan Disapprovals; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards, 88 Fed. Reg. 9336 (Feb. 13, 2022) ("Final SIP Denial"). By its own terms, this final agency action is a final rule regarding "the disapproval of State Implementation Plan (SIP) submissions for 19 states . . . and partial disapproval of elements of the SIP submission for two states[.]" *Id.* at 9336. While the nature of the petition for review here is limited to Kentucky, the "scope of the regulation" is much broader, and so limiting the "action" to Kentucky's state-specific challenge is inappropriate. *Thomas*, 838 F.2d at 1249.

Kentucky's view of the action might be persuasive if the Final SIP Denial were analogous to the action in the main case relied on by the Commonwealth, *American Road & Transportation Builders Association v. EPA*, 705 F.3d 453 (D.C. Cir. 2013). There, California challenged an EPA final rule disapproving of only one SIP: California's. *See* Revisions to the California State Implementation Plan, San Joaquin Valley Unified Air Pollution Control District, 76 Fed. Reg. 26609, 26609 (May 9, 2011) ("EPA is finalizing approval of revisions to . . . [one] portion of the California State Implementation Plan (SIP)"). The action, then, was necessarily only one state's SIP denial.

But this is not the case here.  The Final SIP Denial is more closely aligned with other pollution- or good neighbor-related EPA actions that used a common methodology applied to various states, which were viewed as aggregate actions as opposed to actions by individual states. *See, e.g.*, *ATK Launch Sys.*, 651 F.3d at 1200 (transferring to D.C. a challenge to the inclusion of two counties in an action designating portions of 18 states as failing to comply with a quality standard because the action employed a single uniform regulatory approach across many states nationwide); *S. Ill. Power Coop. v. EPA*, 863 F.3d 666, 671 (7th Cir. 2017) (transferring to D.C. one entity's challenge to an action "of broad geographic scope containing air quality attainment designations covering 61 geographic areas across 24 states," which was "promulgated pursuant to a common, nationwide analytical method"); *W. Va. Chamber of Comm. v. Browner*, No. 98-1013, 1998 WL 827315, at *6–7 (4th Cir. Dec. 1, 1998) (transferring to D.C. a challenge to an action finding that 22 states' SIPs were inadequate because EPA applied a "common legal interpretation" and common analysis to its decision); *Cedar Falls Utils. v. EPA*, No. 16-4504, ECF Doc. No. 4491884, at 9 (8th Cir. Jan. 19, 2017) (stating that the challenged action is one that applied "a single regulatory interpretation and uniform methodology throughout 37 states and the District of Columbia for determining linkages between upwind emissions and downwind receptors pursuant to the Good Neighbor Provision").

So, I find the "action" in question to be the Final SIP Denial in its entirety.  But as discussed below, even assuming the "action" is the state-specific denial of Kentucky's SIP, the following analysis stands.

### 2. Nationally Versus Locally or Regionally Applicable

I proceed, then, to reviewing the action's—the Final SIP Denial's—scope of applicability.  Relevant here are three categories of information.  First, the general four-part interstate transport

test.  Final SIP Denial, 88 Fed. Reg. at 9338.  Second, the specific methodology applied to determine compliance with the 4-part test, which the EPA has iterated over time.  *Id.*  And third, the state-by-state "facts and information, including information from the Agency, available to the state at the time of its submission," which was measured against categories one and two to determine compliance.  *Id.* at 9354.  Importantly, while the "general steps of this framework" (information category one) have continued across multiple agency actions, the framework "allow[s] for some methodological variation, and this can be seen in the evolution of the EPA's analytical process across its prior rulemakings" (information category two).  *Id.* at 9338.

The parties appear to disagree about which of these categories we analyze to answer the applicability question.  The parties' divergence on what the "action" is plays a significant role in this disagreement.  The Petitioners argue that application of the general 4-part test (information category one) to specific states alone does not necessitate the action be considered in the D.C. Circuit, and that the substance of the action—the denial of Kentucky's SIP—is Kentucky-specific. In the Petitioners' view, it is dispositive that the four-part test factored in Kentucky-specific information (information category three), that the regional EPA office was involved, and that Kentucky's SIP "involves facilities and emissions that are located exclusively in the Commonwealth."  (Ky. Opp. to Mots. to Transfer 11–12; Ky. Energy Opp. to Mots. to Transfer 12.)  Kentucky also says that "[t]he judicial-review statute requires that the challenged 'action' be of nationwide scope or effect," not the "bases for disapproving the SIP submissions" (information category two), as the EPA provides.  (Ky. Opp. to Mots. to Transfer 17 (quoting Mots. to Transfer 15 n.8).)  Taking all of this together, the Petitioners assert that the disapproval of Kentucky's SIP is locally or regionally applicable.

Kentucky compares the agency action at hand here to the action in *Motor Vehicle Manufacturers Association, Inc. v. Costle*, 647 F.2d 675 (6th Cir. 1981) (per curiam), where a regulation requiring certain automobile warranties was considered nationally applicable because "it applied nationwide." *Id.* at 677 (relying on *Lubrizol Corp. v. Train*, 547 F.2d 310, 316 (6th Cir. 1976) (discussing the action's "inten[t] to apply uniformly throughout the country" and that "no question of fact or law would vary by region")). Under this view, effectively no agency action that denies any state's SIP would be nationally applicable, as just about any SIP denial would necessarily involve "questions of facts that vary by region" due to the state-specific nature of a SIP.

The EPA, in turn, asserts that the current methodology applied to determine compliance with the four-part framework (information category two) is a national and uniform approach that applies to all states. In applying the state-specific information (category three) to this current methodology, it identified states—including Kentucky—that simply failed to carry their burden in the EPA's comprehensive plan. Because of this, the EPA says, the Final SIP Denial in aggregate is either a nationally applicable action or a locally or regionally applicable action based on a determination of nationwide scope or effect based primarily on its refreshed methodology (information category two). Through this lens, fewer actions would go to the regional circuit. But unlike the Petitioners, the EPA addresses the line-drawing problem directly in its motion, citing to *Thomas*, 838 F.2d at 1249, which rejected an argument that the de facto scope of regulation is controlling for purposes of determining venue under § 7607(b)(1)—an argument almost identical to the Petitioners' argument here.

As the majority states, "[w]hile the approval of SIPs is prototypically local or regional, there is no default rule for the disapproval of a SIP." (Maj. Op. 2–3 (citation omitted) (citing *Am.*

*Rd. & Transp. Builders Ass'n*, 705 F.3d at 455).)  Assuming that the Final SIP Denial is not nationally applicable because it does not "apply" to, in a way that warrants action or requires changes from, the whole "nation," I turn to whether the Final SIP Denial was "based on a determination of nationwide scope or effect[.]"  § 7607(b)(1).

### 3.  Based on a Determination of Nationwide Scope or Effect

The line between "nationally applicable" and "based on a determination of nationwide scope or effect" appears analytically thin upon reading the parties' arguments, so I turn to the canons of construction to find space between these two venue classifications.

The surplusage canon is instructive, as it requires that "every word and every provision is to be given effect" and that no provision "should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence." *Delek U.S. Holdings, Inc. v. United States*, 32 F.4th 495, 498 (6th Cir. 2022) (quoting *Nielsen v. Preap*, 139 S. Ct. 954, 969 (2019)). "The canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme." *Chicago v. Fulton*, 141 S. Ct. 585, 591 (2021) (quoting *Yates v. United States*, 574 U.S. 528, 543 (2015) (plurality opinion)).  So, this canon commands us to give distinct meaning to each of the Act's three venue classifications.

This is not hard to do.  This question is not about the scope of the action—that is the prior question on national versus local or regional applicability.  Here, instead, the question is about the basis of the action:  whether, in disapproving at least parts of 21 states' implementation plans, the EPA *relied on* a determination of nationwide scope or effect.  A review of the Final SIP Denial reveals this answer is yes.

Preliminarily, Kentucky argues that the EPA's analysis consolidated the two-part test for the "based on" classification into just the question of whether the EPA published its finding that

the action is based on a determination of nationwide scope or effect.  But the EPA's briefing shows this is not the case:  The EPA asserts that its finding is both reasonable *and* published—addressing both prongs of this test.  So, the EPA used the correct standard.

Applying this standard, the Final SIP Denial was based on a determination of nationwide scope or effect.  In deciding whether the states complied with their good neighbor obligations, the EPA "appl[ied] a uniform legal interpretation and *common, nationwide analytical methods* with respect to the requirements . . . concerning interstate transport of pollution (*i.e.*, 'good neighbor' requirements) to disapprove SIP submissions that fail to satisfy these requirements for the 2015 ozone [standards]."  Final SIP Denial, 88 Fed. Reg. at 9380 (emphasis added).  In a laymen's terms understanding of the four-part interstate transport test, the EPA identified "monitoring sites"— irrespective of state boundaries—and then identified "states that impact those[.]"  *Id.* at 9338.  To identify these monitoring sites, the EPA "rel[ied] on the results from nationwide photochemical grid modeling using a 2016 base year and 2023 projection year as the primary basis for its assessment of air quality conditions and pollution contribution levels[.]"  *Id.* at 9380.  As the EPA itself put it, "[t]he results of the 2016v2 modeling were used by the EPA as part of the Agency's evaluation of state SIP submissions[.]"  *Id.* at 9339.

By intentional design, the EPA did not focus on an individual state's contribution simply based on its existence as an individual state.  Instead, the EPA set national benchmarks for a comprehensive plan that looked beyond state boundaries due to the nature of air quality issues.  For example, the EPA identified contributions by states "to downwind 8-hour ozone nonattainment and maintenance receptors in 2023."  *Id.* at 9353–54.  Finding that individual states were not committed to doing their part in enacting this nationwide plan, such as by measuring their impact

on the identified receptors by nature of being downwind, the EPA rejected their SIPs and explained why.  The Final SIP Denial is, then, "based on a determination of nationwide scope or effect."

This conclusion remains true even if the "action" is the Petitioners' or the Fifth Circuit's view of the "action" (an individual state implementation plan denial as challenged by a given state), because either action is "*based on* a determination of nationwide scope or effect[.]" § 7607 (b)(1) (emphasis added).  The action provides "common, nationwide analytical methods" to ensure coast-to-coast dedication to inter- and intrastate clean air.  Final SIP Denial, 88 Fed. Reg. at 9380.

The surplusage canon undercuts Kentucky's argument to the contrary that "[t]he judicial-review statute requires that the challenged 'action' *be of* nationwide scope or effect."  (Ky. Opp. to Mots. to Transfer 17 (emphasis added).)  This is simply not what the statute textually instructs. Instead, the action must be *based on a determination of* nationwide scope or effect.  Interpreting the nationwide scope or effect provision as requiring the action itself to *be of* nationwide scope or effect, as Kentucky attempts, would "needlessly" give that provision "an interpretation that causes it . . . to have no consequence." *Nielsen*, 139 S. Ct. at 969 (quoting A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012)).  Such an interpretation "makes nonsense of" the third venue classification:  Asking if an action is of national scope and effect would be "entirely redundant" to the first classification, which asks if an action is nationally applicable.  *Kungys v. United States*, 485 U.S. 759, 778 (1988) (plurality opinion).  As the Petitioners' view "would render superfluous another part of the same statutory scheme," *Fulton*, 141 S. Ct. at 591 (quoting *Yates*, 574 U.S. at 543), we should reject this view in light of the EPA's view that "give[s] effect" to "every word and every provision" of the venue classifications, *Delek*, 32 F.4th at 498 (quoting *Nielsen*, 139 S. Ct. at 969).

That the EPA provided more detailed, individualized evaluations to each state does not alter this reality. To determine if a given state's plan adequately addressed its own role in this nationwide issue, "the contents of each individual state's submission were evaluated on their own merits[.]" Final SIP Denial, 88 Fed. Reg. at 9354. Whether or to what extent the merits of each state's plan were sufficient to comply with its good neighbor obligations was determined *based on* nationwide modeling. Recall the earlier discussion about the line-drawing problems in this type of analysis. Following the Petitioners' argument to its logical conclusion offers no meaningful limiting principle: Even where the agency measures every state in the country against benchmarks derived from boundary-agnostic modeling, announced for the first time in the same final rule, the action would remain in the geographical circuit filed.

I find the Petitioners' argument incompatible with both the "common core of nationwide policy judgments" applied in creating the benchmarks, *id.* at 9380, and the "controlling weight" of the agency's determination, *ABF Freight Sys. Inc. v. NLRB*, 510 U.S. 317, 324 (1994). At all points in its analysis, the EPA had "an eye to ensuring national consistency and avoiding inconsistent or inequitable results" between states. Final SIP Denial, 88 Fed. Reg. at 9381. Recognizing this action as one based on a determination of nationwide scope or effect respects Congress's intent that "the D.C. Circuit . . . review[s] matters on which national uniformity is desirable." *Texas v. EPA*, No. 23-60069, at *4 (5th Cir. May 1, 2023) (internal quotations omitted) (quoting *Texas v. EPA*, No. 10-60961, 2011 WL 710598, at *4 (5th Cir. Feb. 24, 2011)). That multiple circuit courts face the same question about this same final rule across the country is all the more reason to leverage the textual path and send this to the D.C. Circuit. *See, e.g.*, Petition for Review, *Texas v. EPA*, No. 23-60069 (5th Cir. Feb. 14, 2023); Petition for Review, *Arkansas v. EPA*, No. 23-1320 (8th Cir. Feb. 16, 2023); Petition for Review, *Utah v. EPA*, No. 23-9509

(10th Cir. Feb. 13, 2023); Petition for Review, *Pacificorp v. EPA*, No. 23-9512 (10th Cir. Feb. 23, 2023); Petition for Review, *Oklahoma v. EPA*, No. 23-9514 (10th Cir. Mar. 2, 2023); Petition for Review, *Utah Associated Mun. Power Sys. v. EPA*, No. 23-9520 (10th Cir. Mar. 15, 2023); Petition for Review, *Okla. Gas & Elec. Co. v. EPA*, No. 23-9521 (10th Cir. Mar. 16, 2023).

Nor am I moved by Kentucky's protest that it is challenging only the denial of its SIP. In form and function, its challenge is one to the modeling used to deny its SIP, a modeling established to be "nationwide." It is true that the EPA could have issued 21 individual rules. *See* Final SIP Denial, 88 Fed. Reg. at 9380 ("Based on these analyses, the EPA is disapproving SIP submittals . . . for 21 states."). But it did not, because the rule, methodology, and reasoning for the disapprovals remained consistent, just as the EPA's arguments in response to the SIP denial challenges across the country remain consistent. (Mots. to Transfer 8 ("Thus far, petitions for review of the Final [SIP Denial] have also been filed in the Fifth, []Eighth, and Tenth Circuits and EPA has filed, or intends to file, similar motions to transfer to the D.C. Circuit or dismiss those petitions, as well." (footnote omitted)).)

I would therefore grant the motion to transfer to the D.C. Circuit.

## B. Motions to Stay

Having concluded that the D.C. Circuit is the appropriate venue for this case, I move on to consider how, if at all, that decision would impact our jurisdiction to review the Petitioners' motions to say. Venue and jurisdiction are distinct requirements:

> Subject-matter jurisdiction defines a court's "power to adjudicate," while venue specifies "where judicial authority may be exercised" based on "convenience" to the "litigants." The former asks "whether"—whether "the Legislature [has] empowered the court to hear cases of a certain genre?" The latter asks "where"— where should certain kinds of cases proceed?

*Brentwood at Hobart v. NLRB*, 675 F.3d 999, 1002 (6th Cir. 2012) (alteration in original) (citations omitted). As geographic limitations, the Clean Air Act's venue provision asks the "where question." *Id.* (citing *Wachovia Bank v. Schmidt*, 546 U.S. 303, 316 (2006)). We have held that "the issue of venue is not a jurisdictional issue," so "improper venue may be waived." *Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir. 1978) (finding that, in the criminal context, "venue is likewise a privilege granted to the accused rather than a jurisdictional prerequisite"). And "[i]n considering similar litigation-channeling provisions, the Supreme Court has uniformly treated them as venue, not jurisdictional, limitations." *Brentwood*, 675 F.3d at 1002.

While not jurisdictional, venue can be "inextricably bound up with the remedial decision" of whether a stay should issue. *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 760 F.2d 312, 315 (D.C. Cir. 1985) (citation omitted). The venue provision at issue here focuses less on "classic venue concerns," such as "choosing a convenient forum" so parties "will not be forced to defend an action in a faraway circuit." *Brentwood*, 675 F.3d at 1002 (citation omitted) (interpreting agency venue provisions). Instead, § 7607(b)(1) turns purely on the nature of the EPA's final action, vesting the D.C. Circuit with exclusive review of two classifications of final actions. In so doing, Congress's goal was "to ensure uniformity in decisions concerning issues of more than purely local or regional impact." *Nat. Res. Def. Council v. EPA*, 512 F.2d 1351, 1357 (D.C. Cir. 1975) (Bazelon, J., concurring).

In this way, disposition of the Petitioners' motions to stay depends on whether we grant or deny the EPA's motion to transfer. If we deny the EPA's motion to transfer (thereby concluding that we are the proper venue for the question), we would review and rule on the merits of the motions to stay—as the majority does. But if we grant the EPA's motion to transfer, review of the merits of the motions to stay would be inappropriate. As the D.C. Circuit puts it, where "[a]

number of other motions are also pending, but in view of our decision to grant the transfer, we will leave them for determination by the [circuit to which the petition is transferred]." *Indus. Union Dept., AFL-CIO v. Bingham*, 570 F.2d 965, 968 (D.C. Cir. 1977).

So, as I would grant the motion to transfer, I would transfer the entire case, including the motions to stay, to the D.C. Circuit. *See Tri-Cities Holdings LLC v. Tenn. Health Servs. and Dev. Agency*, 598 F. App'x 404, 407 (6th Cir. 2015) (reviewing orders from one district court after a separate district court had "granted the motion to transfer venue, and did not rule on the substantive motions"); *see also RMS*, 64 F.4th at 1375 (transferring entire challenge to the D.C. Circuit, including a pending motion to intervene). Passing the baton to the D.C. Circuit to review all the challenges to the Final SIP Denial ensures that the proper circuit is deciding all substantive motions aside from the original motion to transfer. In a case like this—rejecting SIPs from 21 states throughout eight of the ten EPA regions and ten federal judicial circuits, *see* Final SIP Denial, 88 Fed. Reg. at 9380—we should seek to carry out the intent of "centraliz[ing] review of national SIP issues" as opposed to causing "piecemeal review of national issues in the regional circuits, which risks potentially inconsistent results." *Texas v. EPA*, 2011 WL 710598, at *4.

## II. CONCLUSION

For foregoing reasons, I would transfer the petitions for review—and the motions to stay—to the D.C. Circuit, so I respectfully dissent.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk

Appendix B

# United States Court of Appeals
# for the Fifth Circuit

_____

No. 23-60069

_____

STATE OF TEXAS; TEXAS COMMISSION ON ENVIRONMENTAL
QUALITY; LUMINANT GENERATION COMPANY, L.L.C.; COLETO
CREEK POWER, L.L.C.; ENNIS POWER COMPANY, L.L.C.; HAYS
ENERGY, L.L.C.; MIDLOTHIAN ENERGY, L.L.C.; OAK GROVE
MANAGEMENT COMPANY, L.L.C.; WISE COUNTY POWER
COMPANY, L.L.C.; ASSOCIATION OF ELECTRIC COMPANIES OF
TEXAS; BCCA APPEAL GROUP; TEXAS CHEMICAL COUNCIL;
TEXAS OIL & GAS ASSOCIATION; PUBLIC UTILITY COMMISSION
OF TEXAS; RAILROAD COMMISSION OF TEXAS; STATE OF
MISSISSIPPI; MISSISSIPPI DEPARTMENT OF ENVIRONMENTAL
QUALITY; MISSISSIPPI POWER COMPANY; STATE OF
LOUISIANA; LOUISIANA DEPARTMENT OF ENVIRONMENTAL
QUALITY; ENTERGY LOUISIANA, L.L.C.; LOUISIANA CHEMICAL
ASSOCIATION; MID-CONTINENT OIL AND GAS ASSOCIATION;
LOUISIANA ELECTRIC UTILITY ENVIRONMENTAL GROUP,
L.L.C.; TEXAS LEHIGH CEMENT COMPANY, LP,

_Petitioners_,

_versus_

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY;
MICHAEL S. REGAN, _Administrator, United States Environmental
Protection Agency_,

_Respondents._

---------------------------------------

Petition for Review of a Final Rule
by the Environmental Protection Agency
88 Fed. Reg. 9336-9384

---------------------------------------

## <u>UNPUBLISHED ORDER</u>

Before ENGELHARDT, WILSON, and DOUGLAS, *Circuit Judges*.

PER CURIAM:

There are five motions before us. The first two concern whether venue should be transferred to the D.C. Circuit. It should not; so, we DENY the motions. The third, fourth, and fifth motions concern whether the case should be stayed pending review of the EPA's disapproval of Texas's and Louisiana's State Implementation Plans. It should; so, we GRANT the three motions.

### I.

We first (A) detail the relevant statutory and regulatory background. Then we (B) describe the factual and procedural background.

### A.

The Clean Air Act ("CAA" or "the Act"), 42 U.S.C. § 7401 *et seq.*, "establishes a comprehensive program for controlling and improving the nation's air quality." *BCCA Appeal Grp. v. EPA*, 355 F.3d 817, 821–22 (5th Cir. 2003). But unlike many other federal statutes, the CAA divides enforcement responsibility between the federal and State governments. *See Texas v. EPA*, 829 F.3d 405, 411 (5th Cir. 2016) ("*Texas 2016*") ("The Clean Air Act is 'an experiment in cooperative federalism.'" (quoting *Michigan v. EPA*, 268 F.3d 1075, 1083 (D.C. Cir. 2001))); *see also New York v. United States*, 505 U.S. 144, 167–68 (1992) (listing a handful of similar statutes); *Hodel v. Virginia Surface Min. & Reclamation Ass'n*, 452 U.S. 264, 289 & n.30 (1981) (same). Namely, the EPA identifies air pollutants and sets air quality

standards, while the States implement those standards. 42 U.S.C. §§ 7408–10. Though the EPA and the States both have statutory responsibilities under the CAA, Congress gave the States "primary" authority in this context. *Id.* § 7401(a)(3) ("[A]ir pollution prevention . . . and air pollution control at its source is the primary responsibility of States and local governments."); *id.* § 7407(a) ("Each State shall have the primary responsibility for assuring air quality within the entire geographic area comprising such State . . . ."); *see also Texas 2016*, 829 F.3d at 411 ("The structure of the Clean Air Act indicates a congressional preference that [S]tates, not EPA, drive the regulatory process.").

For its part, the EPA is required to set national ambient air quality standards ("NAAQS") for pollutants that "may reasonably be anticipated to endanger public health or welfare." *See* 42 U.S.C. §§ 7408, 7409. "Once a NAAQS has been promulgated, the [EPA] Administrator must [continue to] review the standard (and the criteria on which it is based) 'at five-year intervals' and make 'such revisions . . . as may be appropriate.'" *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 462–63 (2001) (third alteration in original) (quoting 42 U.S.C. § 7409(d)(1)).

After the EPA promulgates or revises a NAAQS, "[e]ach State must submit a State Implementation Plan"—or "SIP"—"within three years of any new or revised NAAQS." *EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489, 498 (2014) (citing 42 U.S.C. § 7410(a)(1)). Of course, SIPs need to comply with the CAA generally and the NAAQS specifically. *See* 42 U.S.C. § 7410(a)(2) (listing elements that must be included in all SIPs). But States otherwise have "wide discretion" in formulating their SIPs. *Union Elec. Co. v. EPA*, 427 U.S. 246, 250 (1976); *see also BCCA*, 355 F.3d at 822 ("[S]tates have broad authority to determine the methods and particular control strategies they will use to achieve the statutory requirements." (citation omitted)). Indeed: "So long as the ultimate effect of a State's choice of

emission limitations is compliance with the [NAAQS], the State is at liberty to adopt whatever [approach] it deems best suited to its particular situation." *Train v. NRDC*, 421 U.S. 60, 79 (1975).

Next—after States submit their SIPs—the EPA conducts a "limited" review. *Texas v. EPA*, 690 F.3d 670, 675 (5th Cir. 2012) ("*Texas 2012*"). The Agency's review is "limited" in the sense that the CAA "confines the EPA to the ministerial function of reviewing SIPs for consistency with the Act's requirements." *Luminant Generation Co. v. EPA*, 675 F.3d 917, 921 (5th Cir. 2012) ("*Luminant 2012*") (citations omitted); *see also* 42 U.S.C. § 7410(k) (detailing the EPA's timeline for reviewing SIPs). "Thus, if a SIP or a revised SIP meets the statutory criteria of the CAA, then the EPA *must* approve it." *Texas 2012*, 690 F.3d at 676 (emphasis added); *see* 42 U.S.C. § 7410(k)(3) ("[T]he [EPA] Administrator *shall* approve [a SIP] as a whole if it meets all of the applicable requirements of this chapter." (emphasis added)). But if (and only if) a SIP is inadequate, "the Act requires the Agency to promulgate a Federal Implementation Plan"—or "FIP"—"within two years." *EME Homer*, 572 U.S. at 498 (citation omitted); *see* 42 U.S.C. § 7410(c)(1)(B); *see also Texas 2016*, 829 U.S. at 412 ("Only if the [S]tate has not complied with the requirements of the Clean Air Act does EPA assume the role of primary regulator by drafting a state-specific plan."). A FIP "fill[s] all or a portion of . . . an inadequacy in a [SIP]" and binds the State. 42 U.S.C. § 7602(y).

B.

This case involves the EPA's 2015 revision of the ozone NAAQS. On October 26, 2015, the EPA lowered the allowable concentration of ozone in the ambient air from 75 parts per billion ("ppb") to 70 ppb. Ozone NAAQS, 80 Fed. Reg. 65,292 (Oct. 26, 2015).

That triggered the States' duty to craft SIPs implementing the revised NAAQS—including plans for compliance with the CAA's so-called "Good

Neighbor Provision." *See EME Homer*, 572 U.S. at 495–99. Because the wind is "heedless of state boundaries," pollution emitted in upwind States can undermine downwind States' ability to satisfy NAAQS. *Id.* at 495. To address this aspect of national air quality, Congress included the Good Neighbor Provision in the CAA. It requires that, in addition to meeting NAAQS emissions thresholds within a State's borders, SIPs must also "contain adequate provisions" prohibiting emissions in amounts that will "contribute significantly to nonattainment in, or interfere with maintenance by, any other State with respect to any [NAAQS]." 42 U.S.C. § 7410(a)(2)(D)(i)(I).[1] Although the EPA did not promulgate any regulations regarding the States' Good Neighbor obligations under the 2015 ozone NAAQS, *see* 42 U.S.C. § 7601(a), it did issue various memos designed to help States satisfy the Provision.[2]

---

[1] Areas where concentrations of regulated pollutants satisfy the NAAQS are called "attainment" areas, while those that don't are called "nonattainment" areas. 42 U.S.C. § 7407(d)(1)(A)(i)–(ii).

[2] *See* Memorandum from Peter Tsirigotis, Director, Office of Air Quality Planning and Standards, *Information on the Interstate Transport State Implementation Plan Submissions for the 2015 Ozone National Ambient Air Quality Standards under Clean Air Act Section 110(a)(2)(D)(i)(I)* (Mar. 27, 2018) [hereinafter March 2018 Memo]; Memorandum from Peter Tsirigotis, Director, Office of Air Quality Planning and Standards, *Considerations for Identifying Maintenance Receptors for Use in Clean Air Act Section 110(a)(2)(D)(i)(I) Interstate Transport State Implementation Plan Submissions for the 2015 Ozone National Ambient Air Quality Standards* (Oct. 19, 2018) [hereinafter October 2018 Memo]; *see also* Notice of Availability of the EPA's Preliminary Interstate Ozone Transport Modeling Data for the 2015 Ozone NAAQS, 82 Fed. Reg. 1,733 (Jan. 6, 2017) [hereinafter 2017 Data Announcement]. None, however, was supposed to be binding. *See* October 2018 Memo at 1 ("States may use this information when developing [SIPs] for the 2015 ozone NAAQS addressing the [G]ood [N]eighbor [P]rovision," but "[t]his document . . . does not impose binding, enforceable requirements on any party."); March 2018 Memo at 2–3, 6 (similar); 2017 Data Announcement at 1,735 ("[S]tates may rely on this or other appropriate modeling, data or analyses to develop approvable Good Neighbor SIPs.").

After the States submitted their SIPs, the EPA promulgated a final rule on February 13, 2023, disapproving more than 20 States' SIPs for lack of compliance with the Good Neighbor Provision. *See* Interstate Transport of Air Pollution for the 2015 8-Hour Ozone NAAQS, 88 Fed. Reg. 9,336 (Feb. 13, 2023) [hereinafter Final SIP Denial]. Then on March 15, 2023, the EPA signed the Federal Good Neighbor Plan for the 2015 Ozone NAAQS ("Final FIP"), which provides FIPs for 23 upwind States. Three of those States—Louisiana, Mississippi, and Texas, and a variety of other governmental and non-governmental entities therein—petitioned this court for review of the EPA's February 13, 2023 disapproval of their SIPs. *See* 42 U.S.C. § 7607(b).

Our court will consider those petitions in due course. Before us now are five prefatory motions: (1) the EPA's motion to transfer all petitions to the D.C. Circuit; (2) the EPA's motion to dismiss based on improper venue; (3) Texas-based petitioners' two motions to stay the Final SIP Denial as it relates to Texas; and (4) the State of Louisiana's motion to stay the Final SIP Denial as it relates to Louisiana. For the reasons that follow, we DENY the first two motions and GRANT the rest.

## II.

We begin with the EPA's motion to transfer venue to the D.C. Circuit under 42 U.S.C. § 7607(b)(1). We assess the "applicability" of § 7607(b)(1) *de novo* and without deference to the agency. *Texas 2016*, 829 F.3d at 417–21. Section 7607(b)(1) states, in relevant part:

> A petition for review of action of the Administrator in promulgating any national primary or secondary ambient air quality standard . . . or any other nationally applicable regulations promulgated, or final action taken, by the Administrator *under this chapter* may be filed only in the United States Court of Appeals for the District of Columbia. A petition

No. 23-60069

for review of the Administrator's action in approving or promulgating any implementation plan . . . or any other final action of the Administrator *under this chapter* . . . which is *locally or regionally applicable* may be filed only in the United States Court of Appeals for the appropriate circuit. Notwithstanding the preceding sentence a petition for review of any action referred to in such sentence may be filed only in the United States Court of Appeals for the District of Columbia if such action is *based on a determination of nationwide scope or effect* and if in taking such action the Administrator *finds and publishes* that such action is based on such a determination.

42 U.S.C. § 7607(b)(1) (emphasis added).

In other words, the CAA's venue statute divides challenges to EPA "actions" into three general categories. First, "nationally applicable" actions—which must be filed in or transferred to the D.C. Circuit. Second, "locally or regionally applicable" actions—which must be filed in or transferred to the appropriate regional circuit. Third, locally or regionally applicable actions that are "based on a determination of nationwide scope or effect" and accompanied by the EPA's published finding to that effect— which must be filed in or transferred to the D.C. Circuit. *See Texas 2016*, 829 F.3d at 419; *see also Am. Rd. & Transp. Builders Ass'n v. EPA*, 705 F.3d 453, 455 (D.C. Cir. 2013).

As a preliminary matter, the parties dispute what the relevant "action" is for purposes of § 7607(b)(1). We have said that § 7607(b)(1)'s use of "action" means "the rule or other final action taken by the agency that the petitioner seeks to prevent or overturn." *See Texas 2016*, 829 F.3d at 419.

However, such a broad articulation can be difficult to apply when the Agency takes multiple actions in a single rule. What guides us in those cases?[3]

We look primarily to the text of the statute. *See Massachusetts v. EPA*, 549 U.S. 497, 528–32 (2007); *CleanCOALition v. TXU Power*, 536 F.3d 469, 473–74 (5th Cir. 2008). The applicable statute (here the CAA) is the legal source of the agency's (here the EPA's) authority to take the challenged actions (here the SIP denials).[4] And the CAA makes clear that the EPA's relevant actions for purposes of the present litigation are its various SIP denials. Specifically, we consider how the EPA's Final SIP Denial fits into CAA's step-by-step procedure. First, the EPA sets NAAQS. 42 U.S.C. § 7409(b)(1). Next, "each State" submits its own SIP implementing those NAAQS. *Id.* § 7410(a). Then the EPA approves or disapproves *each State's* SIP. *See id.* 7410(k)(1)–(3) ("the State," singular). This final step is the relevant "action," and it is precisely what the EPA did here. As required by § 7410(k)(3), the EPA *separately considered and disapproved* Texas's SIP,

---

[3] The precise contours of the Petitioners' challenges do not define the relevant "action" for § 7607(b)(1)'s purposes. *See, e.g.*, *ATK Launch Sys., Inc. v. EPA*, 651 F.3d 1194, 1199 (10th Cir. 2011) ("The nature of the regulation, not the challenge, controls."). Nor do the "practical effects" of the action. *Am. Rd. & Transp. Builders*, 705 F.3d at 456. Nor does the EPA's chosen method of publishing or labeling the action. *See Brown Express, Inc. v. United States*, 607 F.2d 695, 700 (5th Cir. 1979); *accord Lewis-Mota v. Sec'y of Labor*, 469 F.2d 478, 481 (2d Cir. 1972) ("[T]he label that the particular agency puts upon its given exercise of administrative power is not, for our purposes, conclusive; rather it is what the agency does in fact." (citation omitted)). Accordingly, we do not consider these as guidance in deciding the motion before us.

[4] *See* 42 U.S.C. § 7607(b)(1)("final action . . . *under this chapter*" (emphasis added)); *ibid.* ("any other final action of the Administrator *under this chapter*" (emphasis added)). The phrase "under this chapter" in § 7607(b)(1) refers to the Chapter 85 of Title 42 (*i.e.*, the Clean Air Act). *See generally* 42 U.S.C. §§ 7501–7671q; 42 U.S.C. Ch. 85: Front Matter, Editorial Note ("Act July 14, 1955, ch. 360, 69 Stat. 322 , as amended, known as the Clean Air Act, which was formerly classified to chapter 15B (§1857 et seq.) of this title, was completely revised by Pub. L. 95–95, Aug. 7, 1977, 91 Stat. 685, and was reclassified to this chapter.").

Louisiana's SIP, and Mississippi's SIP because (in its judgment) each failed to comply with the Good Neighbor Provision. Yes, the EPA packaged these disapprovals together with the disapprovals of eighteen other States in the Final SIP Denial. *See* 88 Fed. Reg. 9,336. But again, the EPA's chosen method of publishing an action isn't controlling. What controls is the CAA. And the CAA is very clear: The relevant unit of administrative action here is the EPA's individual SIP denials.

Having isolated the relevant EPA actions at issue, we next (A) explain why the EPA's SIP denials for Texas, Louisiana, and Mississippi are locally or regionally applicable. Then we (B) reject the EPA's argument that § 7607(b)(1)'s exception applies.

A.

Under § 7607(b)(1), "nationally applicable" actions must be transferred to the D.C. Circuit, whereas "locally or regionally applicable" actions must not.

The question of whether the three EPA SIP disapprovals at issue are "nationally applicable" "turns on the legal impact" of the three SIP disapprovals. *Texas 2016*, 829 F.3d at 419; *see also, e.g.*, *Texas v. EPA*, 2011 WL 710598, at *3 (5th Cir. 2011) ("*Texas 2011*") (concluding a nationwide SIP call under 42 U.S.C. § 7410(k)(5) is nationally applicable); *Am. Rd. & Transp. Builders*, 705 F.3d at 455–56 (action disapproving California's SIP is locally applicable and must be filed in the Ninth Circuit); *ATK Launch Sys., Inc. v. EPA*, 651 F.3d 1194, 1199 (10th Cir. 2011) (observing that SIPs are "undisputedly regional action[s]" and "the nature of the regulation . . . controls").

Courts have long held that "SIP rulemakings" are the "prototypical locally or regionally applicable action that may be challenged only in the appropriate regional court of appeals." *Am. Rd. & Transp. Builders*, 705 F.3d

at 455 (quotation and citation omitted); *accord Tex. Mun. Power Agency v. EPA*, 89 F.3d 858, 866 (D.C. Cir. 1996). That is unsurprising: the vast majority of actions involving SIPs are necessarily about individual States and are thus "purely local" and "undisputedly regional." *ATK Launch Sys., Inc.*, 651 F.3d at 1199. Of course, some final actions related to SIPs may be "nationally applicable"—such as when the EPA promulgates regulations that apply to *all* States equally, *Puerto Rican Cement Co. v. EPA*, 889 F.2d 292, 299–300 (1st Cir. 1989), or issues a SIP call, *see* 42 U.S.C. § 7410(k)(5), requiring States to revise their SIPs in light of a new requirement that applies to *all* States, *Texas 2011*, 2011 WL 710598, at *4. In those cases, transfer to the D.C. Circuit is appropriate because the actions uniformly apply to a broad swath of States. *See id.* (concluding that "Congress intended the D.C. Circuit to review matters on which national uniformity is desirable" as a means to take advantage of the D.C. Circuit's "administrative law expertise" and facilitate "the orderly development of the basic law under the Act," and because "[c]entralized review of national issues is preferable to piecemeal review of national issues in the regional circuits, which risks potentially inconsistent results" (quotations and citations omitted)).

But here, the "legal impact" of the three SIP disapprovals is plainly local or regional. Consider "the location of the persons or enterprises that the action[s] regulate[]." *Texas 2011*, 2011 WL 710598, at *3. The EPA's three SIP disapprovals at issue involve only the regulation of Texas, Louisiana, and Mississippi emission sources and have legal consequences only for Texas, Louisiana, and Mississippi facilities. The EPA doesn't point to a single example of our circuit (or any of our sister circuits) granting a similar motion to transfer a petition challenging a SIP approval/denial to the D.C. Circuit, and for good reason: the *State* Implementation Plans, of course, primarily involve individual *States*. Given that the "legal impact" of the EPA's three SIP disapprovals is in Texas, Louisiana, and Mississippi

respectively, we conclude that the EPA's actions at issue in this case are "locally or regionally applicable."

## B.

Next, the § 7601(b)(1) exception. To overcome the "default presumption" that petitions for review of locally or regionally applicable actions "may only be filed in the United States Court of Appeal for the appropriate circuit," *Texas 2016*, 829 F.3d at 419 (quoting 42 U.S.C. § 7607(b)(1)) (internal quotation omitted), the EPA must meet both prongs of the § 7601(b)(1) exception. Because the EPA can't meet the first, we need not consider the second.

To satisfy prong one, the EPA must show that the three SIP disapprovals here were "based on a determination of nationwide scope or effect." 42 U.S.C. § 7607(b)(1). And we must make an "independent assessment of the scope of the determinations." *Texas 2016*, 829 F.3d at 421. The EPA faces a steep hurdle given that SIP disapprovals are usually "highly fact-bound and particular to the individual [S]tate." *Id.* at 421 n.24. That is particularly true here where the EPA itself stated in the Final SIP Denial that each SIP was judged "in light of the *facts and circumstances of each particular state's submission.*" Final SIP Denial at 9,340 (emphasis added).

The EPA cannot meet its burden. Just like the SIP disapprovals at issue in *Texas 2016*, the three SIP disapprovals at issue here were plainly based "on a number of intensely factual determinations" unique to each State. 829 F.3d at 421. Tellingly, the Final Rule's explanations for the Texas, Louisiana, and Mississippi SIP denials rely on the individual EPA *regional* offices' assessments of the unique features of the Texas, Mississippi, and Louisiana SIPs. *See, e.g.*, Final SIP Denial at 9,343; *id.* at 9,354 (disapproving Texas's SIP based on Region 6's evaluation of the "individual" attributes of

No. 23-60069

Texas's SIP). Consider Texas, for example. The EPA's Region 6 determined: that Texas's use of the most recent three-year period (2012–2014) to identify downwind maintenance monitors "is less likely to successfully identify maintenance receptors than the EPA method," EPA Region 6, *2015 8-Hour Ozone Transport SIP Proposal Technical Support Document* 11 (Feb. 2022); that Texas's "modeling underestimates future ozone levels" in 2023, 87 Fed. Reg. at 9,829; and that Texas's multi-factor weight-of-evidence analysis was not sufficiently "compelling" to "counter" "EPA's [one-percent] contribution methodology," *id.* at 9,833–34. These "intensely factual determinations" do not have nationwide scope or effect because they all relate "to the particularities of the emission sources in Texas" and their alleged impact on downwind air quality. *Texas 2016*, 829 F.3d at 421.[5] The same pattern holds true for Louisiana and Mississippi.

---

[5] The dissent acknowledges that "the SIP process is generally highly fact-bound and particular to the individual state." *Post*, at 28 (quoting *Texas 2016*, 829 F.3d at 421 n.24). However, notes the dissent, "EPA has made determinations in other SIP approvals that may have nationwide scope or effect." *Id.* (quoting *Texas 2016*, 829 F.3d at 421 n.24). True, in *Texas 2016*, we noted that "[a] determination that a national standard satisfies a particular requirement in each state *may* be a determination that has nationwide scope or effect." *Texas 2016*, 829 F.3d at 421 n.24 (emphasis added). But "may" implies the Court's discretion. On the facts before us, the intensely factual determinations do not have nationwide scope or effect.

No. 23-60069

Because the EPA fails to rebut the default presumption that locally or regionally applicable actions must not be transferred to the D.C. Circuit,[6] the EPA's transfer motion[7] is DENIED.[8]

III.

Satisfied that venue is proper, we turn to the stay motions.

The Texas and Louisiana Petitioners ("Stay Petitioners") moved for a stay pending review of the EPA's Final SIP Denial. *See* Fed. R. App. P. 18. To prevail, they must satisfy this familiar four-prong test:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 426 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). We consider each prong in turn.

---

[6] The dissent contends that the EPA "*explicitly* chose to make" a published finding that the Final Rule was based on a determination of nationwide scope or effect. *Post*, at 29 (citing Final SIP Denial at 9,380-81). But the EPA's position on the matter is not determinative. "Because 'the determination of our jurisdiction is exclusively for the court to decide,'" we do not defer to the agency when determining venue. *Texas 2016*, 829 F.3d at 417–18 (citations omitted).

[7] The EPA also filed a motion to dismiss based on improper venue. For the reasons set forth above, venue in the Fifth Circuit is proper. Accordingly, the motion to dismiss is DENIED.

[8] Our decision today accords with that of the Eighth Circuit. *See Arkansas v. EPA*, No. 23-1320, ECF No. 5269098 (8th Cir. Apr. 25, 2023) (denying EPA's motion to transfer Arkansas's petition to the D.C. Circuit or dismiss for improper venue); *see also State of Utah v. U.S. Environmental Protection Agency*, No. 23-9509, ECF No. 10110851072 (10th Cir. Apr. 28, 2023) (referring respondents' motions to transfer petitions to the D.C. Circuit or dismiss for improper venue to merits panel).

No. 23-60069

A.

First, likelihood of success on the merits. To prevail, Stay Petitioners must demonstrate that the EPA likely "acted arbitrarily, capriciously, or unlawfully." *Texas 2016*, 829 F.3d at 424–25; *see also Luminant Generation Co. LLC v. EPA*, 714 F.3d 841, 850 (5th Cir. 2013) ("*Luminant 2013*") ("A petition to review the EPA's approval or disapproval of a SIP is governed by the Administrative Procedure Act. *See* 5 U.S.C. § 706.").

Stay Petitioners satisfy their burden in two ways. They (1) make a strong showing that the EPA acted unlawfully by considering factors listed nowhere in the CAA. And they (2) are likely to prevail on the claim that the EPA arbitrarily and capriciously based its Final SIP Denial in part on information only available after Texas and Louisiana had submitted their SIPs.

1.

The EPA exceeded its authority under the CAA by giving undue weight to non-statutory factors when evaluating Stay Petitioners' SIPs. *See* 5 U.S.C. § 706(2)(A), (C) ("The reviewing court shall . . . hold unlawful and set aside agency action . . . not in accordance with law" and/or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."); *see also Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983) ("[A]n agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider . . . ."). Under the CAA's cooperative federalism framework, Congress gave the States "'wide discretion' in formulating their SIPs, including the 'broad authority to determine the methods and particular control strategies they will use to achieve the statutory requirements.'" *Luminant 2013*, 714 F.3d 841 at 845 (first quoting *Union Elec.*, 427 U.S. at 250; then quoting *BCCA*, 355 F.3d at 822). The CAA, by contrast, "confines the EPA to the ministerial function

of reviewing SIPs for consistency with the Act's requirements." *Id.* at 846 (citing 42 U.S.C. § 7410(k)(3)).

The EPA exceeded its "ministerial" role. Rather than merely ensuring that Texas's and Louisiana's SIPs complied with the text of the CAA, *see* 42 U.S.C. § 7410(k)(3), the EPA instead subjected Stay Petitioners' submissions to a range of factors "not found in the Act," *Texas 2016*, 829 F.3d at 428. For example, "[t]he EPA used a 4-step interstate transport framework (or 4-step framework) to evaluate each [S]tate's [SIP] addressing the [Good Neighbor] [P]rovision for the 2015 ozone NAAQS." Final SIP Denial at 9,338. In its words:

> [T]he EPA has developed and used the following 4-step interstate transport framework to evaluate a [S]tate's [Good Neighbor] obligations . . . : (1) Identify monitoring sites that are projected to have problems attaining and/or maintaining the NAAQS (i.e., nonattainment and/or maintenance receptors); (2) identify states that impact those air quality problems in other (i.e., downwind) states sufficiently such that the states are considered "linked" and therefore warrant further review and analysis; (3) identify the emissions reductions necessary (if any), applying a multifactor analysis, to eliminate each linked upwind state's significant contribution to nonattainment or interference with maintenance of the NAAQS at the locations identified in Step 1; and (4) adopt permanent and enforceable measures needed to achieve those emissions reductions.

*Ibid.* This is one "permissible" way to effectuate the CAA's Good Neighbor Provision, *EME Homer*, 572 U.S. at 524 (holding as much in the FIP context), but it is by no means the only way. That is because the EPA's preferred "4-step framework" is nowhere to be found in the Good Neighbor Provision. *See* 42 U.S.C. § 7410(a)(2)(D)(i)(I) (only requiring that SIPs "contain adequate provisions" prohibiting emissions that will "contribute significantly to

nonattainment in, or interfere with maintenance by, any other State with respect to any [NAAQS]").

True, the EPA "recognized" in its Final SIP Denial "that [S]tates may be able to establish alternative approaches to addressing their [Good Neighbor] obligations for the 2015 ozone NAAQS that vary from [the 4-step] framework." Final SIP Denial at 9,340. But the Agency backtracks in the next breath: "deviation from [the 4-step] approach to ozone transport *must be substantially justified* and have a well-documented technical basis." *Ibid.* (emphasis added). Put differently: If a State wants to evaluate its Good Neighbor obligations in any way other than the EPA's 4-step approach, it must first "substantially justif[y]" that decision to the Agency. *Ibid.* If not violative of the CAA itself, this is at least inconsistent with the statute and jurisprudence applying it.

The EPA's approach inverts the CAA and "reflects a misapprehension by the EPA of its authorized role in the SIP-approval process." *Luminant 2012*, 675 F.3d at 928 n.8. The CAA's text and our precedent compel that "the EPA does not possess *any* discretionary authority in th[e] [SIP-approval] process. *Only* the states enjoy discretion in implementing the dictates of the CAA." *Ibid.* (emphasis added) (quotation and citations omitted); *see also Fla. Power & Light Co. v. Costle*, 650 F.2d 579, 587 (5th Cir. 1981) ("The great flexibility accorded the states under the Clean Air Act is further illustrated by the sharply contrasting, narrow role to be played by EPA."). Of course, if the EPA were instead defending a FIP (a *Federal* Implementation Plan) the Agency would be entitled to exercise far more discretion in how to effectuate the Good Neighbor Provision—including by using its preferred 4-step framework. *E.g.*, *EME Homer*, 572 U.S. 489. But unless and until a SIP is lawfully denied, the State remains "primary." *Compare* 42 U.S.C. § 7401(a)(3) ("[A]ir pollution prevention . . . is the primary responsibility of States . . . ."), *and id.* § 7407(a)

("Each State shall have the primary responsibility for assuring air quality . . . ."), *and Train*, 421 U.S. at 79 ("The Agency is plainly . . . relegated by the [CAA] to a secondary role . . . ."), *with* Final SIP Denial at 9,367 ("The EPA does not, however, agree with the comments' characterization of the EPA's role in the [S]tate-[f]ederal relationship as being 'secondary.'").

The EPA's imposition of its preferred 4-step framework is just one example of how the Agency "improperly failed to defer to [Stay Petitioners'] application of the [CAA]." *Texas 2016*, 829 F.3d at 428. Others abound—including the EPA's rejection of "Texas['s] . . . definition of maintenance receptors" and "Louisiana's . . . application of a higher contribution threshold than 1 percent of the NAAQS." Final SIP Denial at 9,356, 9,359; *cf.* 42 U.S.C. § 7410(a)(2)(D)(i)(I) (offering no definition of "maintenance"); *Texas v. EPA*, 983 F.3d 826, 839 (5th Cir. 2020) ("*Texas 2020*") ("[T]he text of the [CAA] does not require EPA to adopt a one-percent threshold."). In sum, because the "EPA's lack of deference to the [S]tate[s] inverts the agency's 'ministerial function' in this system of 'cooperative federalism,'" *Texas 2016*, 829 F.3d at 428 (citation omitted), Stay Petitioners have made a strong showing that the EPA acted unlawfully. *See also Texas 2012*, 690 F.3d at 675 ("The Clean Air Act is an experiment in federalism, and the EPA may not run roughshod over [it] . . . ." (quotation omitted)).

## 2.

The EPA's actions are also constrained by the Administrative Procedure Act's arbitrary-and-capricious standard. *See* 5 U.S.C. § 706(2)(A). When an agency acts, it must "reasonably consider[] the relevant issues and reasonably explain[]" its actions. *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021) (citations omitted); *see also Michigan v. EPA*, 576 U.S. 743, 751–52 (2015) ("[A]gency action is lawful

only if it rests on a consideration of the relevant factors" and "important aspect[s] of the problem." (internal quotations and citations omitted)). We cannot "substitute" our "own policy judgment for that of the agency." *Prometheus*, 141 S. Ct. at 1158. But we must still ensure that "the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained its decision." *Ibid.* The upshot is that we "must set aside any action premised on reasoning that fails to account for 'relevant factors' or evinces 'a clear error of judgment.'" *Univ. of Tex. M.D. Anderson Cancer Ctr. v. HHS*, 985 F.3d 472, 475 (5th Cir. 2021) (quoting *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989)).

Stay Petitioners have demonstrated a strong likelihood of success on their claim that the EPA acted arbitrarily and capriciously. The EPA likely violated § 706(2)(A) when it based its SIP disapprovals in part on policies and modeling data developed *after* Texas and Louisiana had already submitted their SIPs and *after* the EPA's statutory deadline to act had expired. Two of those decisions are exemplars.

First, the EPA based its disapproval of Texas's SIP in part on policies that the EPA released on October 19, 2018—months after Texas submitted its SIP, and eighteen days after the October 1 deadline for all States to submit theirs. *See* October 2018 Memo; 42 U.S.C. § 7410(a)(1) (SIP deadline). Worse yet, the October 2018 Memo represented a material shift from earlier guidance, because it changed the EPA's previous March 2018 guidance by adding *new* hurdles for States to clear when identifying maintenance receptors—such as by proffering evidence of a downward trend in ozone concentrations at the site since 2011. October 2018 Memo at 4; *cf.* March 2018 Memo at A-2 (no such hurdles). The EPA disapproved Texas's SIP in part because of its failure to abide by the October 2018 Memo—which, to reiterate, was issued *after* the statutory deadline for Texas to submit its SIP.

Final SIP Denial at 9,364 ("[The] [S]tates' submissions did not meet the terms of the . . . October 2018 [Memo] addressing . . . maintenance receptors."); *see also id.* at 9,370 ("EPA evaluated [S]tate's [sic] analyses and found no [S]tate successfully applied the[] criteria [in the October 2018 Memo] to justify the use of one of these alternative approaches."). Such a "[s]udden . . . change" after the SIP submission window was likely arbitrary and capricious. *Smiley v. Citibank*, 517 U.S. 735, 742 (1996). That is particularly true where, as here, the EPA apparently disavowed its initial assurance that its after-the-statutory-deadline memo would "not impose binding, enforceable requirements on any party." October 2018 Memo at 1.

Second, the EPA also acted arbitrarily and capriciously by grounding its Final SIP Denial in modeling data that wasn't available when Louisiana and Texas submitted their SIPs. Louisiana's SIP submission was finalized on November 14, 2019; Texas submitted its SIP on August 17, 2018. Under the CAA, the EPA was required to "act on the submission[s]" by either approving or disapproving them "within 12 months." *See* 42 U.S.C. § 7410(k)(2). The EPA therefore had until November 14, 2020 to render a final decision on Louisiana's submission, and almost a year less for Texas's. Instead of rendering a timely decision, the EPA slow-walked for *years* beyond CAA's statutory deadline—finally acting on *February 13, 2022*. And when it eventually got around to evaluating Stay Petitioners' SIPs, the EPA did not use the modeling data that it had published on the eve of the SIP-submission deadline "to assist [S]tates' efforts to develop [G]ood [N]eighbor SIPs for the 2015 ozone NAAQS." March 2018 Memo at 1–2. Instead, it relied upon various significant changes to its modeling data that it adopted long *after* the statutory deadline. *See* Final SIP Denial at 9,366 (the "meteorology and boundary conditions used in modeling" became available in November 2020, the "updated emissions inventory files used in the current modeling were

publicly released" in September 2021, and the modeling software the EPA used was not public until December 2020).

At best, these choices evince a "clear error of judgment" on the EPA's part. *Anderson Cancer Ctr.*, 985 F.3d at 475 (quotation omitted). And at worst they perpetrate a "surprise switcheroo" on both Texas and Louisiana. *Env't Integrity Project v. EPA*, 425 F.3d 992, 996 (D.C. Cir. 2005) (Sentelle, J.); *accord Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1810 (2019) ("surprise switcheroo"). Agencies have wide discretion to deploy their expertise, but they cannot move the administrative goalpost in so doing. *See Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 156 (2012) ("[A]gencies should provide regulated parties fair warning of the conduct a regulation prohibits or requires." (quotation and alteration omitted)).

The EPA responds that the "Act does not prohibit EPA from using the most accurate, up-to-date data to evaluate Good Neighbor SIP submissions, even if that data was not available when a state submitted its SIP." *See also* Final SIP Denial at 9,366 ("It can hardly be the case that the EPA is prohibited from taking rulemaking action using the best information available to it at the time it takes such action. Nothing in the CAA suggests that the Agency must deviate from that general principle when acting on SIP submissions."). That response is unavailing for at least two reasons.

First, regardless of whether the CAA "prohibit[s] EPA from using the most accurate, up-to-date data," it was nevertheless arbitrary and capricious of the EPA to do so without giving due consideration to the reliance the EPA itself had engendered by publishing guidance and data that—in its words— was designed "to assist [S]tates' efforts to develop [G]ood [N]eighbor SIPs for the 2015 ozone NAAQS." March 2018 Memo at 1–2. The EPA isn't required to issue such guidance to help States discharge their obligations

under the Good Neighbor Provision. *See EME Homer*, 572 U.S. at 509–10; Final SIP Denial at 9,363–64. But when the EPA *does* issue such guidance and modeling data—like it did in March 2018—it must take due account of the State's "serious reliance interests" before "chang[ing] course." *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1913 (2020) (citing *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222 (2016)). The EPA's failure to adequately consider the States' reliance interests before holding them to new guidance and modeling data issued long after the States were statutorily required to submit their SIPs was arbitrary and capricious.

Second, the EPA's decision to consider after-the-statutory-deadline information also "fail[ed] to account for 'relevant factors'"—namely, the CAA's system of cooperative federalism. *Anderson Cancer Ctr.*, 985 F.3d at 475 (quoting *Marsh*, 490 U.S. 360 at 378). Congress decided that the States should "drive the regulatory process." *Texas 2016*, 829 F.3d at 411. This choice is clearly reflected throughout the CAA, such as the provisions cabining the Agency's decisional timeframe, 42 U.S.C. § 7410(k)(1)–(2), and the sections "confin[ing] the EPA to the ministerial function of reviewing SIPs for consistency with the Act's requirements," *Luminant 2012*, 675 F.3d at 921; *e.g.*, 42 U.S.C. § 7410(k)(3) ("shall approve"). Here, however, the EPA ignored its statutory deadline by a measure of *years*; used that extra time to collect more data, issue novel guidance, and develop new modeling; denied Stay Petitioners' SIPs in part based on that new information; then created FIPs imposing the EPA's policy preferences on the States. Even if, as the EPA suggests, the CAA "does not [explicitly] prohibit EPA from using the most accurate, up-to-date data to evaluate Good Neighbor SIP submissions," the EPA must still recognize the tension between what it did and what the Act's system of cooperative federalism requires, then account for that "relevant factor[]," *Marsh*, 490 U.S. 360 at 378. Otherwise, the EPA could easily flout the CAA's deadlines with impunity, then leverage that disregard

to summarily reject SIPs based on the States' failure to consider information that only became available after the SIP-submission deadline.

In so thwarting the CAA, this would also transform the EPA's statutory role from that of a "ministerial" overseer to one of a freewheeling dictatorial regulator. *Luminant 2012*, 675 F.3d at 921; *see also Texas 2016*, 829 F.3d at 430 ("EPA may not use its own delay as an excuse for imposing burdens on [the States] that the [CAA] does not permit."); *Texas 2012*, 690 F.3d at 675 ("The Clean Air Act is an experiment in federalism, and the EPA may not run roughshod over [it]." (quotation omitted)). Accordingly, Stay Petitioners have made a strong showing that the EPA "acted arbitrarily, capriciously, [and] unlawfully." *Texas 2016*, 829 F.3d at 424–25.

## B.

The remaining factors likewise favor a stay.

Stay Petitioners "will be irreparably injured absent a stay" of the EPA's Final SIP Denial. *Nken*, 556 U.S. at 426 (quotation omitted). The Final SIP Denial was the statutory prerequisite for the EPA to create the Final FIP and impose its preferred system of emissions controls and reductions on the States. 42 U.S.C. § 7410(c)(1)(B). As Stay Petitioners point out, those changes will soon become operative, including for the 2023 ozone season: "The EPA posted the [F]inal FIP on its website on March 15, 2023 . . . [and] has stated that it expects the FIP to be effective in June or July of 2023." And many regulated entities have already commenced compliance efforts or will soon be required to do so. *See* Final FIP at 420 (providing that certain of Stay Petitioners' facilities "will begin participating in the [FIP's] Group 3 trading program on May 1, 2023, regardless of the rule's effective date"); 87 Fed. Reg. 20,036 (Apr. 6, 2022) ("[Regulated entities] should begin engineering and financial planning *now* to be prepared to meet this

implementation timetable." (emphasis added)). The EPA's Final SIP Denial has thus already caused irreparable injury. Unless stayed, it will do even more harm.

First, "allowing the Final [SIP Denial] to stand pending the appeal would disrupt the system of cooperative federalism enshrined in the Clean Air Act." *Texas 2016*, 829 F.3d at 433.

Second, Stay Petitioners will be forced to spend billions of dollars in compliance costs to achieve the Final FIP's emissions-reduction targets. That includes the costs of buying new equipment and retrofitting existing equipment; installing, operating, and maintaining that machinery; and purchasing allowances (at greater cost) on the emissions-trading market. These harms are undoubtedly irreparable because—as the EPA does not contest—"[n]o mechanism here exists for the [Stay Petitioners] to recover the compliance costs they will incur." *Id.* at 434; *see also BST Holdings, LLC v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) ("[C]omplying with a regulation later held invalid almost always produces the irreparable harm of nonrecoverable compliance costs." (quotation and emphasis omitted)); *Texas 2016*, 829 F.3d at 433 ("The tremendous costs of the emissions controls impose a substantial financial injury on the petitioner power companies which, in this circuit, may also be sufficient to show irreparable injury." (quotation omitted)).

Third, the Final FIP will strain Texas's and Louisiana's power grids. That's particularly true here because the Final FIP will become operative in the middle of the summer 2023 peak load conditions. This simultaneous change to Stay Petitioners' emissions budgets alongside the increased seasonal demand on their power grids will dramatically increase the probability of price spikes and "load-shedding"—*i.e.*, as Stay Petitioners observe, "requir[ing] utilities to disconnect customers from the power grid

to avoid a system-wide blackout." And we have recognized that "the threat of grid instability and potential brownouts alone constitute irreparable injury." *Texas 2016*, 829 F.3d at 434.

Accordingly, Stay Petitioners have made a strong showing of irreparable harm. The EPA, by contrast, has not demonstrated that "issuance of the stay will substantially injure the[m]" or undermine the "public interest." *Nken*, 556 U.S. at 426 (quotation omitted). As Stay Petitioners point out, the EPA's multi-year delay in disapproving Texas's and Louisiana's SIPs undercuts any claim that time is of the essence when it comes to imposing the EPA's Final FIP. But time *is* of the essence with respect to "the public's interest in ready access to affordable electricity," *Texas 2016*, 829 F.3d at 405, and "a steady supply of electricity during the summer months," *Sierra Club v. Ga. Power Co.*, 180 F.3d 1309, 1311 (11th Cir. 1999).

IV.

For the foregoing reasons, the EPA's motion to transfer all petitions to the D.C. Circuit and motion to dismiss for improper venue are DENIED. Stay Petitioners' three motions to stay the Final SIP Denial as it relates to Texas and Louisiana are GRANTED. Our ruling here concerns only the motion for transfer, the motion to dismiss, and the motions for stay pending review; "our determinations are for that purpose" only "and do not bind the merits panel." *Veasey v. Abbott*, 870 F.3d 387, 392 (5th Cir. 2017).

No. 23-60069

Dana M. Douglas, *Circuit Judge*, dissenting:

The instant matter concerns the EPA's Final Rule of February 13, 2023, disapproving 21 States' SIPs for lack of compliance with the Good Neighbor Provision. 42 U.S.C. § 7607(b)(1) determines the proper venue for petitions for review of a final rule. Under its provisions, petitions for review of actions that are "nationally applicable" or that the EPA found and published based on determinations of "nationwide scope or effect" may be filed only in the D.C. Circuit. Here, the EPA applied a uniform national approach to evaluate state plans and ensure equity among them, making the Final Rule at issue nationally applicable on its face. But even assuming the Final Rule to be regional, the EPA made and published a finding that its Final Rule was based on a determination of "nationwide scope or effect." Because I find venue to be improper in this circuit, I dissent.

In its motion to dismiss or transfer the petitions, the EPA raises the threshold question of whether the petitions are properly adjudicated in this court or whether they belong in the D.C. Circuit under the judicial review provision of the Clean Air Act. *See* 42 U.S.C. § 7607(b)(1). The inquiry begins by determining if the challenged regulation is "nationally applicable" or "locally or regionally applicable." Applicability turns on "the legal impact of the action as a whole." *Texas v. EPA*, 829 F.3d 405, 419 (5th Cir. 2016) ("*Texas 2016*"). Whether an action is "nationally applicable" is based on "the face of the rulemaking, rather than its practical effects." *Texas v. EPA*, 706 F. App'x 159, 163 (5th Cir. 2017) ("*Texas 2017*") (quoting *Dalton Trucking, Inc. v. EPA*, 808 F.3d 875, 881 (D.C. Cir. 2015)).

On its face, the Final Rule is nationally applicable. It applied a

consistent four-step interstate transport framework[9] to evaluate plans submitted by states across the country and disapproved of SIPs from 21 states throughout eight of the ten EPA Regions and ten federal judicial circuits. *See Texas v. EPA*, 2011 WL 710598, at *3 (5th Cir. Feb. 24, 2011) (transferring petition challenging an EPA action notifying 13 states that their SIPs were inadequate) ("*Texas 2011*"); *ATK Launch Sys., Inc. v. EPA*, 651 F.3d 1194, 1200 (10th Cir. 2011) (transferring challenge to an action designating portions of 18 states as failing to comply with a NAAQS because it employed a single uniform regulatory approach across states nationwide; *S. Ill. Power Coop v. EPA*, 863 F.3d 666, 671 (7th Cir. 2017) (transferring challenge to an action "of broad geographic scope containing air quality attainment designations covering 61 geographic regions across 24 states," which was "promulgated pursuant to a common, nationwide analytical method").

The face of the Final Rule indicates it is nationally applicable, but I am further convinced by the arguments raised by Petitioners in their motions to stay which clearly show that Petitioners are challenging a nationally applicable aspect of the Final Rule. Naturally, Texas, Louisiana, and Mississippi frame the challenged actions as particularized SIP denials to support their regional venue argument. However, their own briefing indicates that this is not the action the Petitioners are challenging. Instead,

---

[9] The EPA utilized a four-step framework to evaluate compliance with the Good Neighbor Provision for prior ozone NAAQS. The EPA (1) identified nonattainment and maintenance "receptors"; (2) identified upwind states that impact air quality problems in downwind states sufficiently such that the states are considered "linked"; (3) identified any necessary emissions reductions to eliminate each upwind state's significant contribution to nonattainment or interference with maintenance of the NAAQS at the locations identified in Step 1; and (4) adopted permanent and enforceable measures needed to achieve those emissions reductions. Final Rule, 88 Fed. Reg. 9336, 9338 (Feb. 13, 2023).

the State Petitioners' Opposed Motion to Stay challenges the Final Rule on a national scale. The State parties argue that the Final Rule is being challenged because "it fails to explain EPA's after-the-fact reversal of prior guidance regarding how States should identify maintenance receptors," and "disregards the Act's cooperative federalism by denying the SIP based on emissions-modeling data available only *after* Texas [or insert any other state] was statutorily required to submit its SIP provisions." (emphasis in original).

Put differently, the State parties are challenging the EPA's actions of reversing a prior policy that applied to and impacted *all* the states and not providing necessary data to *all* the states prior to the statutory deadline to submit SIP revisions. When framed in the context of the State parties' *own* arguments against the agency action, it becomes clear that they are not challenging the denial of their state SIPs such that the legal impact is only felt in this region, but the framework in which the EPA determined denial was necessary to 21 states throughout this country. *See ATK Launch Systems, Inc.*, 651 F.3d at 1199-1200. Accordingly, the nature of Petitioners' challenge is inextricably intertwined with arguments applicable to challenges to *all other* SIP disapprovals in the Final Rule because they were based on a common EPA rationale and methodology that Petitioners now seek to attack.

The D.C. Circuit, then, is the proper venue for such a challenge. This is supported by our circuit's decision in *Texas 2011*. There, Texas argued its challenge to the SIP call implicated a local, rather than national, aspect of the rule. 2011 WL 7140598 at *4. However, our court noted that Texas's "merits argument in its motion to stay the SIP call challenge only national features of the rulemaking" including that the SIP call was procedurally unlawful. *Id*. We stated "[n]one of these issues turn on the particulars of the SIP Call's impact within this Circuit." *Id*. Likewise, here, none of the issues raised by Texas, Louisiana, and Mississippi turn on particulars within this circuit, but instead on EPA determinants of a national scale that should be

considered by the D.C. Circuit.  *See also Puerto Rican Cement Co. v. EPA*, 889 F.2d 292, 299-300 (1st Cir. 1989) (finding EPA regulations to be "nationally applicable" where they applied to any SIP "that ha[d] been disapproved with respect to prevention of significant deterioration of air quality in any portion of any State where the existing air quality is better than the national ambient air quality standards" and the list of states governed by the regulations changed as SIPs were approved and disapproved by the EPA).

Accordingly, I would find that our venue inquiry ends there because the State Petitioners challenge nationally applicable regulations, and thus any challenges should be considered by the D.C. Circuit.

However, for the same reasons, this case satisfies the § 7601(b)(1) exception for actions that have nationwide scope or effect.  The exception involves a two-pronged inquiry, and the majority finds that the EPA fails at prong one.  The majority relies on the disapprovals being based "on a number of intensely factual determinations" which "do not have nationwide scope or effect" because they relate to particularities of emissions sources.  However, as noted, although there may be factual determinations relevant to each state, the challenged action is the *nationally applied framework* in which the EPA reviewed the SIPs of all states and denied 21 of them.

The majority relies on *Texas 2016*, which also provides support for a finding of a nationwide scope or effect under the instant allegations.  Specifically, *Texas 2016* provides that "[a]lthough the SIP process is generally highly fact-bound and particular to the individual state, EPA has made determinations in other SIP approvals that may have nationwide scope or effect."  *Id*. at 421, fn. 24.  Moreover, "[a] determination that a national standard satisfies a particular requirement in each state may be a determination that has nationwide scope or effect."  *Id*.  That is precisely the case here.

To the second prong, in *Texas 2016*, the EPA explicitly did not make a finding that its Final Rule had a nationwide scope or effect, and thus, our court concluded that this venue was proper. Here, however, the EPA *explicitly* chose to make this finding, stating that its justification for the Final Rule is based on a determination of nationwide scope or effect. Final Rule, 88 Fed. Reg. 9,336, 9380-81 (Feb. 13, 2023) ("[T]o the extent a court finds this action to be locally or regionally applicable, the Administrator is exercising the complete discretion afforded to him under the CAA to make and publish a finding that this action is based on a determination of 'nationwide scope or effect' within the meaning of CAA section 307(b)(1).").

Finally, it is clear from the briefing that these petitions concern "matters on which national uniformity is desirable" and raise the kinds of issues Congress intended for the D.C. Circuit to decide. *Texas 2011*, 2011 WL 710598, at *4. Petitioners here invite multiple circuits to concurrently review the merits of the same legal interpretation, policy decisions, and analytical methodology that the EPA applied consistently in a single agency action to SIPs throughout the United States. Courts may well reach inconsistent outcomes on matters of interstate pollution, which were clearly meant to be filed and considered together in the D.C. Circuit. This is not just a hypothetical problem—states in other circuits are bringing practically the same challenges, which are currently before the Eighth and Tenth Circuits. If this circuit were to determine that the underlying standard utilized by the EPA was wrong, this would impact the EPA's determinations in other states and would gut the underlying policy of the venue provision: uniformity in standards that have national effect and centralization of SIP review. *See id.* ("Centralized review of national issues is preferable to piecemeal review of national issues in the regional circuits, which risks potentially inconsistent results.").

No. 23-60069

Having determined venue to be improper, I respectfully dissent, not finding it necessary to reach Petitioners' motions to stay.